## STIDHAM et al. v. LEWIS. (No. 12214.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 30, 1929.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King, and J. E. Handy, all of Wichita Falls, for appellee.

BUCK, J. E. L. Lewis, a feme sole, the daughter of H. E. Lewis, sued O. M. Stidham and C. C. Thrasher, a partnership operating under the name of Stidham & Thrasher, for damages, and for cause of action alleged: That plaintiff was the owner of a rotary derrick, erected and used for the purpose of drilling a well for oil or gas in block 297, Waggoner Colony Lands subdivision, Wichita county, and paid to the defendants the sum of $1,200 for the erection thereof. That, shortly prior to the date of suit, the derrick was blown down by a windstorm, which damaged the same to the extent of approximately $200, and that the value of materials alone in said derrick, remaining undamaged, was the sum of $672.97. That on or about June 7, 1928, the defendants, in violation of the criminal statutes of this state and without notice to the plaintiff, and in direct violation of her property rights, dismantled said derrick and appropriated the materials therein to their own use and benefit, and removed the same from the location of the well to the city of Electra, about 15 miles distant. She prayed for actual damages in the sum of $672.97, and for exemplary damages in the sum of $1,000, and for the cost of suit, etc.

The defendants answered by a general demurrer and certain special exceptions, and alleged: That they had built the derrick for the plaintiff, for which plaintiff agreed to pay them the sum of $1,200. That plaintiff further obligated herself to pay the defendants the sum of $1,000 as a rental for the use of a string of rotary drilling machinery and other equipment used in connection therewith, and further agreed to pay them $25 per day for each and every day the same remained in the possession of the plaintiff after 30 days. That to secure the payment of said rentals there was retained by the defendants a chattel mortgage lien upon the derrick erected by them. That, the derrick having been blown down by a windstorm, the defendants, to preserve said property and prevent the same from being taken away from its location by other parties, dismantled the derrick and stacked the lumber composing the same—that is, such lumber as was not so injured as to prevent its being used again—and removed the same to the city of Electra. That plaintiff was at liberty to take possession of said property after the settlement of said rental account owing to said defendants, and after the payment to the defendants of the sum of $105, which the defendants claimed to be the reasonable and customary charges for the labor and service that defendants had rendered in preserving and caring for the material.

A contract was pleaded by defendants, which provided: That the defendants were to erect on block 297 the derrick in controversy, and that the plaintiff was to pay them $1,200 therefor. That the defendants were to furnish the material for the construction of the derrick and bear all expenses of its erection. That the defendants agreed to lease to plaintiff, for the purpose of drilling a well on said land, its string of rotary drilling tools, for which plaintiff agreed to pay $1,000 for the use of said string of tools for the first 30 days, and $25 a day for each day thereafter during which plaintiff might use said string of tools. Plaintiff was to carry compensation insurance upon the employees used in the drilling of said well under the provisions of the Employers' Liability Act of the state of Texas. Plaintiff further agreed to hold defendants harmless from any and all debts, damages, etc., contracted or to be contracted by her in the drilling of said well. The contract further provided:

"As security for the rent for the use of said drilling tools and equipment herein specified, the parties of the first part are to have, and there is hereby retained by said parties of the first part, a chattel mortgage lien upon the derrick upon the lease on which said well is to be drilled. And also to guarantee to parties of the first part the expense of returning said property to the parties of the first part in the condition hereinbefore specified. To further guarantee the return of said drilling tools and equipment belonging to parties of the first part, and furnished to party of the second part under the terms of this contract in as good condition as when received, ordinary wear and tear only excepted, the party of the second part does this day, simultaneously with the execution of this contract, furnish to parties of the first part a good and solvent bond, to be approved by parties of the first part, in the penal sum of two thousand ($2,000.00) dollars, conditioned that if the party of the second part returns said tools, equipment and machinery so furnished to parties of the first part in accordance with the terms of this contract, then said bond to be null and void, otherwise to remain in full force and effect."

The cause was tried in the Seventy-Eighth district court of Wichita county, upon one special issue submitted to the jury, to wit:

"What was the value of the derrick material removed by the defendants at the time and place from which same was removed?"

Answer: "$400.00."

Upon this verdict so rendered, the court rendered judgment for plaintiff and against defendants in the sum of $400, and from this judgment the defendants have appealed.

### Opinion.

Evidently the court determined, as a matter of law, that the act of the defendants in dismantling the overturned derrick, and in removing the usable materials composing the derrick to the city of Electra, constituted a conversion of the property. It will be remembered that the chattel mortgage lien retained by the defendants did not provide for the taking possession of the derrick, or the materials composing the same, without legal action. "Conversion," in the sense the word is used in law, is the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the exercise of the same rights by the owner, either permanently or for an indefinite time, and may be effected by taking actual corporal possession and control over the property of another so as to prevent the owner from the exercise of such right. France v. Gibson (Tex. Civ. App.) 101 S. W. 536; McCarthey v. North Texas Loan Co. (Civ. App.) 101 S. W. 835; Sandford v. Wilson, 2 Willson, Civ. Cas. Ct. App. §§ 247, 249.

A constructive conversion takes place when a person does such acts in reference to the goods or personal chattels of another as amount, in view of the law, to the appropriation of the property to himself. A direct conversion takes place when a person actually appropriates the property of another to his own beneficial use and enjoyment, or to that of a third person, or destroys it, or alters its nature. Bouv. Law. Dict. vol. 1, p. 669.

Such unauthorized taking of personal property may be conversion. A wrongful sale by a bailee may constitute conversion. See cases cited in 1 Bouv. Law Dict. p. 670. An improper and informal seizure of goods by either the lienor or an officer of the court may constitute the conversion. An informal sale of such officer or such lienor may constitute the conversion. 26 R. C. L. p. 1117, § 28.

In Pittman v. Fort Worth Warehouse & Storage Co. (Tex. Civ. App.) 258 S. W. 1105, Mrs. Pittman sued the warehouse company for damages for the withholding of certain household goods, which the warehouse company claimed to be for its protection in the collection of moving charges. We held in that case that such unlawful act constituted conversion of the property. We further held that the fact that the plaintiff, after the goods were taken and alleged to be converted by the defendant, refused to accept the goods when tendered, either out of court or in court, did not preclude her from recovery for such conversion. If the taking was unwarranted in the first place, and while the defendant held the goods, even though it may be said that it held them for the collection of its charges only, the plaintiff had been to the expense of buying other goods, and she would be under no obligation to accept the goods tendered thereafter. We cited 26 R. C. L. p. 632, § 13, 38 Cyc. 147, and 38 Cyc. 2102.

We conclude that the action of the defendants in taking possession of the overturned derrick, and in hauling the parts to the city of Electra, constituted a conversion of such parts, for which they would be liable in damages.

It is also urged that the verdict is without evidence to support it, in that the preponderance of the testimony tended to show that the derrick, in the condition it was when it was blown over and down, was worth not to exceed $250. It is true that a number of the witnesses testified to a less value than found by the jury, to wit, $400, but H. L. Lewis testified that in his opinion the value of the timbers composing the derrick, at the place where the derrick had formerly been erected, was somewhere in the neighborhood of $700; that he based his figures on the amount of breakage, which was deducted from the total of the value of the material. He testified that he had been in the oil field business practically all his life, at least for 20 years. We think that he was qualified to testify as to the value of the derrick in the condition it was when it was blown down.

The jury was authorized, we think, to find $400 as the value of such material, from the testimony of various witnesses, some a good deal less than $400, and Lewis' estimate being a good deal more.

It is our judgment that the judgment of the trial court should be affirmed; and it is so ordered.