Wilfred WAISATH et ux., Petitioners,

v.

LACK'S STORES, INC., Respondent.

No. B–2679.

Supreme Court of Texas.

Dec. 15, 1971.

Ted Dunnam, Port Lavaca, Richard Thornton, Galveston, for petitioners.

Cullen, Carsner, Edwards, Williams & Stevenson, C. C. Carsner, Jr., Victoria, for respondent.

DANIEL, Justice.

This is a suit by Wilfred Waisath and wife, former operators of an apartment complex, against Lack's Stores, Inc., a furniture dealer, for damages alleged to have resulted from conversion by Lack's of certain furniture owned by the Waisaths. The trial court, based on jury findings, awarded the Waisaths $1,200 actual damages and $3,000 exemplary damages. The Court of Civil Appeals reversed and rendered judgment that the Waisaths take nothing. 464 S.W.2d 220. We reverse the judgment of the Court of Civil Appeals and remand the case to that court for further proceedings consistent with this opinion.

From 1964 to December 27, 1967 the Waisaths were lessees of an apartment complex of 41 units in Port Lavaca, Texas, known as the Colonial Arms Apartments. They provided the furniture and collected additional rent therefor from tenants of furnished units. The Waisaths placed in the apartments certain furniture which they had purchased from Lack's and on which Lack's had valid liens. In addition, the Waisaths allege that they had placed 30 items of personally owned furniture in the apartments which were not included in Lack's liens. In late 1967 the Waisaths' lessors sold the apartment complex to Ed-

ward Wayne Smith, who filed a lawsuit and obtained an injunction order dated December 27, 1967, requiring the Waisaths to deliver to him possession of the Colonial Arms Apartments. On or about the same date, the Waisaths moved out of the apartments, leaving therein what they alleged to be 94 items of furniture which were under Lack's liens and 30 items which were not under lien. The Waisaths alleged that Lack's, on or about the same date, took possession and converted all of the furniture left in the apartments, thereby depriving them of the use and benefit thereof. The Waisaths' suit originally involved certain claims against Lack's with reference to the furniture under liens as well as that not under lien. However, the trial court's judgment and this appeal are narrowed to and concern only the 30 items of furniture which the Waisaths alleged to be owned by them outright and free of any lien held by Lack's. The Court of Civil Appeals' holdings with respect to the effect of the Uniform Commercial Credit Code and the foreclosure on the 94 items under liens are not at issue in this appeal.

The jury found that the Waisaths owned furniture located in the Colonial Arms Apartments on or about December 27, 1967, against which Lack's had no lien.[1] There was evidence in the record to support this finding, and Lack's made no objection to the submission of this issue.

In answer to Special Issues 2 and 3, the jury found that Lack's converted some of plaintiffs' furniture against which it had no lien and that the reasonable cash market value thereof was $1200.00.[2]

Lack's asserts that there is no evidence in the record to support the jury finding

---

1. The jury answered "Yes" to the following special issue: "Special Issue No. 1. Do you find from a preponderance of the evidence that the Waisaths were the owners of any furniture located in the Colonial Arms Apartments on or about December 27, 1967, against which Lack's Stores, Inc. had no lien?"

2. Special Issue No. 2, answered "Yes," was submitted as follows: "Do you find from

a preponderance of the evidence that the Defendant at the time and on the occasion in question converted any of the Plaintiffs' furniture against which Defendant had no lien, if you did so find? . . . You are instructed that 'conversion' is defined to be any distinct act or dominion wrongfully asserted over another's property, in denial of his rights or inconsistent with it."

of conversion in answer to Special Issue No. 2. The Court of Civil Appeals said "Plaintiffs pleaded and there was evidence to show . . . that when they were required to abandon the apartments, they attempted to remove the furniture listed, but were prevented by defendant, which took possession . . . ." However, the Court held, "There is, in our opinion, no evidence, and certainly, insufficient evidence, of any conduct by defendant which can be said to constitute conversion of any furniture on or before December, 1967 (the time pleaded and found by the jury), nor until defendant undertook to foreclose its chattel mortgage lien and repossessed or purchased the furniture in March, 1968." In this holding, the Court of Civil Appeals has mistakenly applied its test of the evidence to a time, "on or *before* December, 1967," which was not pleaded or found by the jury. Plaintiffs alleged that the conversion occurred "on or about December 27, 1967" and that it continued thereafter, and the jury found that it occurred "at the time and on the occasion in question."

■ After careful examination of the long and tedious record, we find that there is evidence of probative force in support of the jury's finding of conversion on or about December 27, 1967, and that, with the accompanying definition of "conversion," this was properly submitted as a fact issue.[3] Cases hereinafter cited approve the definition of "conversion" as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. Mrs. Waisath testified that Lack's Port Lavaca manager, with whom she had dealt for several years, had been informed that the Waisaths had furniture in the apartments which was not included in Lack's liens; that on or about December 27, 1967, she attempted to make arrange-

ments with Mr. David B. Lack, President of Lack's, and with Taylor Van & Storage to move all the furniture from the apartments and store it; that she could not accept the conditions laid down by Mr. Lack, and that Mr. Lack discouraged Taylor from moving the furniture. Called as an adverse witness, Mr. Lack admitted that on or shortly after December 27, 1967, his company, by and through its agents and employees, took over dominion and control of the furniture which Mrs. Waisath left in the Colonial Arms Apartments when she departed; that the company left the furniture in the apartments and began collecting rent thereon through an arrangement with the new owner and operator, Wayne Smith, which was formalized by written contract dated January 12, 1968. Mr. Lack testified that he authorized and ratified the acts of the company's agents and employees in exercising dominion and control over the furniture. Mrs. Waisath testified that a Lack's employee spent the entire week after December 27, 1967 inventorying the furniture in the apartments; that she called another Lack's employee about her personally owned furniture, stating that she wanted to get it from the apartments; that he said he could do nothing about it but would check into it and call her back; that he never did so. She testified that Lack's began collecting rentals on her furniture after December 27, 1967, and that she subsequently saw several pieces of her personally owned furniture being moved by Lack's truck from the apartments to its Port Lavaca store. She identified several items of the furniture in photographs which she took on April 15, 1969 in the back of Lack's store. She testified that on this occasion she asked a Lack's employee for the furniture and that he replied that Mr. Lack had told him not to talk with her about it.

---

Special Issue No. 3, to which jury answered "$1200.00," read: "What do you find from a preponderance of the evidence was the reasonable cash market value, if any, of the furniture in question *against* which Defendant had no lien, converted by the Defendant, if you have found that it did convert the same, at

the time and on the occasion in question at its location in Calhoun County, Texas?"

3. The evidence referred to and hereinafter summarized may be found in the Statement of Facts at pages 18–22, 24–37, 52–70, 144–145, 154–158, 189–191, 239–245, 279–281, 302–319, and 325–326.

The Waisaths' ownership of the items of furniture not under liens carried with it the right of possession, there being no evidence of any agreement by them to the contrary. Lack's had no possessory rights in the furniture which was not included within its liens. Therefore, its assumption of dominion and control over such items of furniture was unauthorized. To constitute a conversion, it is not necessary that there be a manual taking of the property in question. The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion. American Surety Co. of New York v. Hill County, 254 S.W. 241 (Tex. Civ.App.1923), affirmed 267 S.W. 265 (Tex. Com.App.1924); Sharkey v. Hollums, 400 S.W.2d 353 (Tex.Civ.App.1966, writ ref. n. r. e.); Lyon v. Wood, 363 S.W.2d 179 (Tex. Civ.App.1962, no writ hist.); Fenberg v. Fenberg, 307 S.W.2d 139 (Tex.Civ.App. 1957, no writ hist.); 89 C.J.S. Trover & Conversion § 36, pp. 545–547; 1 Restatement on Torts (1934) #221, comment c, p. 567. The definition of "conversion" given by the trial court in connection with Special Issue No. 2 is substantially the same as that approved in Gulf, C. & S. F. Ry. Co. v. Buckholts, 270 S.W. 1008 (Tex. Com.App.1925); Bradley v. McKinzie, 226 S.W.2d 458 (Tex.Civ.App.1950, no writ hist.); and Stidham v. Lewis, 23 S.W.2d 851 (Tex.Civ.App.1929, no writ hist.).

Without offering any evidence denying its possession or use of the furniture in question, Lack's asserts that, even if the Waisaths owned the 30 items of furniture, they had no possessory right which would support a judgment against Lack's for conversion. This is based on the theory that the injunction order of December 27, 1967, in favor of a third party, Edward Wayne Smith, gave him possession of the Waisaths' furniture, and that Smith, doing business as Colonial Arms, signed a contract with Lack's on January 12, 1968, placing it in possession of all furniture then located in the apartments. We disagree with Lack's interpretation of both the injunction order and the contract with Edward Wayne Smith. The injunction order of December 27, 1967, is devoted almost entirely to compelling the Waisaths to deliver possession of the apartment structure to the new owner, Smith. It listed by general reference many items of personal property appertaining to the apartment structure and operation, such as the keys, lists of tenants, deposits, advance rentals, and telephones, which were ordered to be turned over to Smith. It did not list any furniture. At the very end of the three-page order, it did require the Waisaths to file an inventory "of all personal property, including appliances, which are a part of said Colonial Arms Apartments, and they shall deliver all personal property and appliances over to the Plaintiff's [Smith's] control and management." The evidence is undisputed that Smith did not own or claim the furniture located in the apartments on December 27, 1967, either personally or as "a part of the said Colonial Arms Apartments." The only interpretation consistent with the remainder of the order and its subsequent interpretation by Smith and Lack's is that the order referred to personal property and appliances owned by Smith as a part of the Colonial Arms Apartments and not to the furniture owned by the Waisaths, the majority of which was under the liens held by Lack's. In any event, it is undisputed that it was Lack's, rather than Smith, which took over dominion and control of the furniture left by the Waisaths in the apartments on December 27, 1967. Mr. Lack so testified. He admitted that his company left the furniture in the apartments under an arrangement by which Smith would collect rentals thereon from the tenants and remit same to Lack's. This arrangement is set forth in the contract between Smith, doing business as Colonial Arms, and Lack's Stores, Inc., dated January 12, 1968, under which Lack's agreed "to supply rental furniture to the Colonial Arms", in consideration of which Lack's was given an "exclusive right" to furnish such rental furniture for a period of five years. It provides that Colonial Arms will collect the rent on the furniture

**448**

in advance from its tenants and remit same to Lack's, with the amount of such furniture rental to be determined by Lack's. Mr. Lack testified that it was in accordance with this contract that his company exercised dominion and control over and left in the apartments the furniture which was already there when the Waisaths moved. The contract and the actions of the parties thereunder clearly refute Lack's contention on this appeal that Smith first obtained legal possession of the Waisath furniture and in turn delivered it to Lack's.

 Whether the record contains evidence of probative force in support of the jury's finding in answer to Special Issue No. 2 is a question within the jurisdiction of this Court, and we have answered it affirmatively. The question of the sufficiency of that evidence, having been duly raised by assignment of error, is within the jurisdiction of the Court of Civil Appeals. Bond v. Otis Elevator Company, 388 S.W. 2d 681 (Tex.1965); Childre v. Casstevens, 148 Tex. 297, 224 S.W.2d 461 (1949); Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.L.R. 361 (1960). As heretofore stated, the Court of Civil Appeals did not apply its test of sufficiency of the evidence to the issue as pleaded and found by the jury. Therefore, the case will be remanded to the Court of Civil Appeals for its determination of whether the evidence is sufficient to support the jury's finding that the defendant converted plaintiff's property "at the time and on the occasion in question" (on or about December 27, 1967). If it does so find, it will proceed to consider the other points raised in that court with respect to the remaining issues. If it does not so find, it will necessarily remand the case to the trial court for a new trial. Stanfield v. O'Boyle, 462 S.W.2d 270 (Tex.1971).

Accordingly, the judgment of the Court of Civil Appeals is reversed and the case is remanded to that court for further consideration consistent with this opinion.