



# MEMORANDUM OPINION

No. 04-11-00449-CV

Bryan **SHARP** and James Chris Sharp,
Appellants

v.

Chester Gray **MOSIER**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 09-2079-CV
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  June 6, 2012

REVERSED AND REMANDED

Bryan Sharp and James Chris Sharp (the "Sharps") filed suit against Chester Gray Mosier

("Mosier") and Phillip James Williams ("Williams") for conversion, violation of the Texas Theft

Liability Act, negligence, unjust enrichment, violations of the Texas Deceptive Trade Practices

Act ("DTPA"), and conspiracy related to the removal of pecan trees on the Sharps' property.

The Sharps also sued Mosier for breach of contract and Williams for trespass.  Mosier filed a no-

evidence motion for summary judgment as to all of the Sharps' claims except the DTPA claim

and a traditional motion for summary judgment on all of the Sharps' claims.[1]  The trial court granted Mosier's motions and the Sharps appeal.  We reverse the trial court's judgment and remand.

### SUMMARY JUDGMENT EVIDENCE

The Sharps own approximately 135 acres of property that includes an area with pecan trees known as the "pecan bottom."  Mosier leased a portion of the property for his cattle.  James Sharp testified that under the lease Mosier was responsible for fertilizing the grass, cutting the grass, and maintaining the fences.  James stated that when negotiating the lease, he discussed with Mosier that at some point the pecan bottom would need to be cleaned up.  James testified that initially he considered cleaning the bottom as trimming the grass and removing lower limbs to allow pecan harvesting machinery to work in the area.  However, James also testified that at a later point in time he initiated a conversation with Mosier about having someone not only clean underneath the trees, but also trim the trees to produce a better pecan crop.  He testified he did not discuss with Mosier cutting down any trees to improve the growth of larger trees.  It was James's testimony that he wanted the tree limbs trimmed, but did not want any trees removed.

James testified that Mosier later informed him that Williams could prune the pecan trees and clean up the bottom in exchange for the wood from the tree limbs he trimmed.  James testified that Mosier told him Williams had cleaned a lot of bottom land in the general area. James stated that he and Mosier "were in agreement" to tell Williams to come on the property and do the work.  James further testified he authorized Mosier to have Williams cut limbs off the trees, but not to remove any trees.  James testified that based on his conversations with Mosier, he assumed Mosier knew how to clean pecan bottoms and that Mosier knew of Williams's

---

[1]The Sharps' trespass cause of action was directed only to Williams.  The Sharps took a default judgment against Williams on all of their claims against him.

reputation. He stated he did not expect Mosier to be involved in the work, but assumed Mosier would be on the property and "know what was happening."

James also testified that he had a conversation with Williams during which he asked Williams if he was just taking out dead wood and the wood trimmed off the trees and not "taking out" trees. James stated that Williams responded "I'm good." James testified Williams told him the Mosier had "walked" the property with him and identified the trees that were to be removed. James testified that Williams told him he assumed he could take some trees based on a conversation with Mosier. James stated that when he asked Mosier about how many trees had been cut down, Mosier responded "a couple" that were on the fence line or had fallen.

Both James and Bryan agreed it was not Mosier's responsibility to clean the pecan bottom. The Sharps testified they did not supervise Williams' work, nor did they evaluate his performance at any time. The Sharps surveyed the pecan bottom after Williams left the property and determined that sixty-five live pecan trees had been removed by Williams. Bryan Sharp testified that Williams removed approximately twelve truckloads of wood from the property.

## STANDARD OF REVIEW

When filing a no-evidence motion for summary judgment, the movant must specifically challenge the evidentiary support for an element of a claim or defense. TEX. R. CIV. P. 166a(i) cmt. (1997). Once the movant files a no-evidence motion for summary judgment, the respondent has the burden to produce summary judgment evidence raising a genuine issue of material fact on the challenged element. *Id.*; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, the non-movant is not required to marshal its proof; he need only present some evidence of probative value raising a fact issue about which reasonable minds could differ. TEX. R. CIV. P. 166a(i) cmt. (1997); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.

2002). We view the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

A traditional summary judgment requires the movant to establish that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't. of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *KPMG Peat Marwick v. Harrison Co. Houston Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The movant has the burden to conclusively disprove one element of the challenged cause of action or to conclusively prove all of the elements of an affirmative defense. *Little*, 148 S.W.3d at 381; *Pustejovsky v. Rapid-American Corp.*, 35 S.W.3d 643, 645–46 (Tex. 2000). "'When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant' and resolves all doubts in favor of the nonmovant." *Little*, 148 S.W.3d at 381; (quoting *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000)).

## DISCUSSION

### *Conversion*

Conversion is an act of dominion and control wrongfully exerted over another's personal property and inconsistent with that person's right in the property. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). "An act of conversion does not have to be an actual manual taking but merely an act that is such active interference with the owner's right of property or control as to deprive him of its free use and enjoyment." *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex. 1992).

Mosier moved for summary judgment on the ground that there is no evidence he exercised dominion and control over the Sharps' property by removing and excessively trimming

the pecan trees. The Sharps contend there is a fact issue regarding whether Mosier exercised dominion and control over the pecan trees based on the evidence that: (1) Mosier voluntarily found Williams to do the work, (2) Mosier recommended Williams for the job, (3) Williams assumed he could take "some" trees based on a conversation with Mosier, (4) Mosier walked the property with Williams and identified what trees to cut down, (5) the Sharps told Mosier that no trees should be cut, and (6) Mosier knew Williams was taking "some" trees. The Sharps argue this evidence is at least a scintilla of evidence that Mosier, by authorizing the removal of trees, exercised dominion and control over the Sharps' property.

James's testimony that he instructed Mosier not to cut down any trees, and his testimony that Williams said Mosier had authorized him to cut down "some" trees and take the wood that he cut, is some evidence that Mosier interfered with the Sharps' property rights over the wood after the trees were cut down. Based on this evidence, a fact issue exists on whether Mosier exercised dominion and control over the Sharps' property, that being the wood from the trees removed from the property.

### Texas Theft Liability Act

The Texas Theft Liability Act provides: "[a] person who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a) (West 2011); *see also Ashburn v. Caviness*, 298 S.W.3d 401, 403 (Tex. App.—Amarillo, 2009, no pet.); *Moorehouse v. Chase Manhattan Bank*, 76 S.W.3d 608, 614 (Tex. App.—San Antonio 2002, no pet.). Under the Act, "theft" means "unlawfully appropriating property or unlawfully obtaining services described by Section 31.03, 31.04, 31.05, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, Penal Code." TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2) (West 2011). Section 31.03 of the Penal Code provides in relevant part:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent;

TEX. PENAL CODE ANN. § 31.03(a) & (b) (West Supp. 2011). "Appropriate" means "to bring about a transfer or purported transfer of title to or other non-possessory interest in property, whether to the actor" or "another or to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4) (West Supp. 2011).

The Sharps contend Mosier violated the Texas Theft Liability Act because he "exercised control over the trees by authorizing Williams to cut them down and thereby brought about the removal of the trees by Williams, without" their consent. As discussed above, there is evidence Mosier was not given permission to direct Williams to cut down any trees, and there is some evidence that Mosier told Williams to take "some trees." Accordingly, there is a fact issue regarding whether Mosier unlawfully appropriated the Sharps' property by authorizing Williams to cut down trees and take the wood.

### Negligence

Mosier moved for summary judgment on the Sharps' negligence claim on the ground that he owed no duty to the Sharps regarding Williams's actions. The Sharps argue that because Mosier voluntarily undertook to hire Williams to clean up the bottom land and trim the trees he assumed a duty.

Whether a duty exists is a "question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Generally, there is "no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d

829, 837 (Tex. 2000); *see also* RESTATEMENT (SECOND) OF TORTS § 314 (1965) ("The fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). If the defendant has no duty, then he cannot be held liable for negligence. *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 529 (Tex. 2009).

However, even if there is no general duty, "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976); *see also Torrington Co.*, 46 S.W.3d at 838–39. The court in *Colonial Sav. Ass'n* cited section 323 of the Second Restatement of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Colonial*, 544 S.W.2d. at 119–20 (quoting RESTATEMENT (SECOND) OF TORTS § 323 (1965)). This rule applies to situations where there is bodily injury or injury to property. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983); *Colonial Sav. Ass'n*, 544 S.W.2d at 116.

Here, there is some evidence that Mosier undertook to perform services for the Sharps when he found Williams and recommended him for the job. The evidence also indicates Mosier communicated with Williams on behalf of the Sharps. There is evidence Mosier "walked" the property with Williams and identified the trees that were to be removed. Taking the Sharps' evidence as true and disregarding any evidence to the contrary, there is a fact issue on whether Mosier voluntarily undertook a duty.

*Unjust Enrichment*

Mosier contends he was entitled to summary judgment on the Sharps' unjust enrichment claim because he did not remove any wood from the Sharps' property and received no benefit from the Sharps related to Williams's work on their property. Mosier also contends he was not was unjustly enriched because the Sharps did not pay him any consideration for Williams work; rather it was Williams who paid Mosier $1000.00 as a finder's fee.

Unjust enrichment is not an independent cause of action, but is a theory of recovery that allows recovery to a party "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.); *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied.). "Unjust enrichment demands restitution when a party receiving property or benefits would be unjustly enriched if it were permitted to retain the property or benefits at the expense of another." *Heldenfels Bros., Inc.*, 832 S.W.2d at 43. The doctrine applies "the principles of restitution to disputes where there is no actual contract, and is based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution." *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied)(internal citations omitted). A party may recover under a theory of unjust enrichment when the profit received is unjust under the principles of equity and the defendant had some connection with the alleged wrongdoing. *Id.*; *see also Casstevens v. Smith*, 269 S.W.3d 222, 230 (Tex. App.—Texarkana 2008, pet. denied).

Because there is some evidence to raise a fact issue on whether Mosier undertook to perform services for the Sharps when he found Williams and recommended him for the job to

clean the pecan bottom, we hold there is a fact issue on the Sharps' unjust enrichment claim. As discussed above, there are factual issues regarding Mosier's involvement in the hiring of Williams to clean the pecan bottom and Williams's execution of the work. James testified Williams told him Mosier "walked" the property with Williams and identified the trees that were to be removed, even though James told Mosier only to trim the trees. There is a scintilla of evidence to support the Sharps' claim that Mosier was unjustly enriched when he was paid a $1000 "finders fee." Accordingly, we hold a fact issue exists on the Sharps' unjust enrichment claim.

## Breach of Contract

The Sharps claim Mosier breached the lease agreement because he did not maintain the property "in equal condition during the lease" because "the removal of 60 or more trees occurred without the Sharps' consent, with the authorization of Mosier, and during the term of Mosier's lease." The lease provided "the property is accepted as is and will be maintained in equal condition during the lease. The Lessee will weed spray and fertilize all open areas (weather permitting)."

The elements of a cause of action for breach of a contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach. *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc*., 184 S.W.3d 760, 769 (Tex. App.—Dallas 2005, pet. denied). A contract has been breached when a party fails to perform an act that it has expressly or impliedly promised to perform. *Id*. at 769–70.

The lease expressly provided that the property is accepted as is and will be maintained in equal condition during the lease term. As discussed above, there is evidence Mosier told

Williams to take "some" trees. James testified Williams told him he removed the trees believing he had the right to do so based on conversations with Mosier. Taking the Sharps' evidence as true and disregarding any evidence to the contrary, a fact issue exists as to whether Mosier breached the lease agreement by failing to maintain the property in equal condition during the lease.

**Conspiracy**

The Sharps plead that Mosier and Williams conspired to commit the unlawful acts of conversion, violations of the Texas Theft Liability Act, negligence, unjust enrichment, breach of contract, and violations of the DTPA. The elements of an actionable civil conspiracy include:

(1) two or more persons;
(2) an object to be accomplished;
(3) a meeting of the minds on the object or course of action;
(4) one or more unlawful, overt acts; and
(5) damages as a proximate result.

*Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators." *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963). Recovery under a conspiracy is based on the underlying tort, not the conspiracy. *Lesikar v. Rappeport*, 33 S.W.3d 282, 302 (Tex. App.—Texarkana 2000, pet. denied).

As discussed above, there is evidence that Mosier authorized Williams to cut down some trees and that Williams was informed he could take the wood from the trees he cut down or trimmed. James testified Williams understood he could cut down trees based on a conversation with Mosier. Taking this evidence as true and indulging every reasonable inference in favor of

the Sharps raises a fact issue on whether Mosier and Williams conspired to commit unlawful acts. The trial court erred in granting Mosier's no-evidence motion for summary judgment on the Sharps' conspiracy claim.

**Deceptive Trade Practices Act**

Mosier sought a traditional motion for summary judgment on the Sharps' DTPA claim on the following ground:

> Finally, Plaintiffs allege that to the extent that Mosier claims he was hired to perform services complained of by Sharp, his actions constitute violations of The Deceptive Trade Practices Act. This cause of action fails under its own terms because Mosier does not claim that he was hired by the Sharps to perform the tree services; just the opposite, and the Sharps admit this.

In response to the traditional motion for summary judgment, the Sharps asserted Mosier was part of the transaction as "middleman" or go-between and as such participated in the consumer transaction. The Sharps asserted section 17.50(a)(3) of the DTPA allows recovery against any person who commits an unconscionable act in connection with a deceptive trade practice even when there is no privity between the plaintiff and defendant. In their brief, the Sharps claim there is ample evidence to raise a fact issue on whether they sought to acquire services (cleaning up the pecan bottom) and that those services form the basis of the DTPA claim. They argue Mosier only sought summary judgment on the DTPA claim on the ground the Sharps did not seek to acquire such services from him. They claim "Mosier was a part of, participated in, and profited from, the consumer transaction at issue and can be held liable as a result." The Sharps argue the DTPA allows recovery against "any person" who commits an unconscionable act in connection with a deceptive trade practice and they are not required to show they sought the services from Mosier. They also claim there is evidence Mosier authorized

the removal of the pecan trees and that he affirmatively misrepresented the amount of trees being removed.

Mosier claims these contentions are irrelevant because summary judgment was based on the Sharps' pleading that the Sharps admitted Mosier was not hired to perform the tree trimming service. Mosier argues the following language in the Sharps' pleading establishes the Sharps denied they hired him to clean the pecan bottom:

> [T]o the extent that the Defendants claim they were hired to perform the services complained of herein by Sharp, which is denied, the Defendant's actions as described above constitute violations of the Texas Deceptive Trade Practices Act.

However, viewing the pleadings as a whole, we interpret this language as the Sharps' denial that they authorized Mosier to cut down any trees. The denial that they authorized Mosier to remove trees is not sufficient to meet Mosier's burden of proof under his traditional motion for summary judgment to conclusively negate at least one essential element of the Sharps' DTPA claim. *Little*, 148 S.W.3d at 381; *Pustejovsky*, 35 S.W.3d at 645–46.

Mosier also argues he did not violate the DTPA because he did not provide any goods or services to the Sharps. Mosier cannot avoid liability under the DTPA merely because he personally did not provide goods or services to the Sharps. Section 17.50(a)(3) allows a consumer to maintain an action if he has been adversely affected by any unconscionable action or course of action by any person. TEX. BUS. & COM. CODE ANN. § 17.50(a)(3) (West 2011); *see also Bennett v. Bank United*, 114 S.W.3d 75, 79 (Tex. App.—Austin 2003, no pet.). "Privity of contract with a defendant is not required for the plaintiff to be a consumer." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). "The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint." *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983). For example in *Flenniken*, the

plaintiffs filed suit against a bank for wrongful foreclosure and DTPA violations. *Id*. at 706. The plaintiffs entered into a $42,500.00 mechanic's lien note with a home builder whereby the builder agreed to construct a residence on their property. *Id*. This note was secured by a deed of trust to the plaintiffs' real property. *Id*. The builder then assigned the note and his contract lien to the bank. The Supreme Court held that although there was no contractual relationship between the bank and the plaintiffs the plaintiffs had standing to sue the bank. The court stated the goods or services sought or acquired formed the basis of the complaint. *Id.*at 707.

There is evidence that Mosier found Williams to do the work, recommended him to the Sharps, and instructed him to remove trees. This evidence is sufficient to raise a fact issue regarding Mosier's relationship to the transaction between the Sharps and Williams. Mosier has not conclusively negated an essential element of the Sharps' DTPA claim.

Mosier additionally contends he was entitled to summary judgment on the Sharps' DTPA claim because his representations to the Sharps were based on what Williams told him, he did not supervise Williams work, and was not in a position to know what Williams was doing. Mosier did not present this as a ground for summary judgment; therefore, we need not consider it on appeal.

We reverse the trial court's judgment granting summary judgment in favor of Mosier on the Sharps' claims of conversion, violation of the Texas Theft Liability Act, negligence, violation of the Texas Deceptive Trade Practices Act, unjust enrichment claim, breach of contract, and conspiracy.


Steven C. Hilbig, Justice