In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00377-CV
_____

**RUSSELL SCHOONOVER AND TEXAN TOWING AND RECOVERY,**
**Appellants**

**V.**

**EUNICE MORSE, Appellee**

**On Appeal from the County Court at Law No. 2**
**Montgomery County, Texas**
**Trial Cause No. 12-11-11730 CV**

**MEMORANDUM OPINION**

Eunice Morse (Morse) sued Russell Schoonover (Schoonover) and Texan Towing and Recovery[1] (Texan) on theories of breach of contract, fraud, and conversion. Morse alleged that she hired Schoonover and Texan to store property in her control, and that the defendants sold the property without giving her notice.

_____

[1]Texan Towing and Recovery is the assumed name of a sole proprietorship operated by Russell and Heather Schoonover.

1

Following a bench trial, the trial court found in favor of Morse and awarded her actual damages in the amount of $33,100. In their brief on appeal, Schoonover and Texan (collectively appellants) contend the evidence is factually insufficient to support the judgment obtained by Morse on her claims for breach of contract, fraud, and conversion. In five issues, the appellants contend that Morse (1) failed to prove that she was the actual owner of the property in dispute, (2) failed to establish a breach of contract, (3) failed to prove that appellants converted the property in dispute to the detriment of Morse, (4) failed to prove that the appellants committed fraud by making any misrepresentations to Morse, and (5) failed to prove that Morse suffered damages in the amount awarded in the judgment. We affirm the trial court's judgment.

STANDARD OF REVIEW

In a nonjury trial, when no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all the necessary findings to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). In the absence of any findings of fact and conclusions of law, the appellants must show that the trial court's judgment was not supported by any legal theory raised by the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 279 (Tex. 1987).

A legal sufficiency challenge will be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998).

We review the evidence in the light most favorable to the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Whorton*, 742 S.W.2d at 279. When implied findings are challenged for legal sufficiency, "we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Sibley*, 111 S.W.3d at 52. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Wilson*, 168 S.W.3d at 827.

In considering a factual sufficiency review, the appellate court must consider both the evidence that supports the verdict and the evidence that is contrary to the verdict. *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951). The appellate court will reverse the judgment and order a new trial only if the trial court's ruling is so

contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.*

## EVIDENCE

Morse testified that she inherited the estate of her son, Steven Morse, who during his life operated a construction company and owned various pieces of equipment, trailers and machinery. Morse stated that she probated her son's estate and that she inherited everything but a mobile home. The documentary evidence admitted at trial includes the estate inventory property schedule, depicting a value in 2008 of the property that Morse inherited. Morse testified that she moved most of the property to her premises. She then became concerned that it would be stolen, so she arranged for the appellants to tow and store the property until she could secure her premises. The appellants picked up the property on June 20, 2009. Morse produced photographs of the property on the day Schoonover towed it from Morse's property. Morse testified that when Schoonover picked up the property, he also asked for and obtained Morse's permission to borrow a hydraulic dump trailer that was located at Steven Morse's business premises.

According to Morse, Schoonover towed and stored all the property without expectation of payment as a favor to a family friend. Morse testified that Schoonover was a friend of her deceased son's stepdaughter, Amber Cochran.

4

Morse asked Schoonover if he would put the property in his fenced yard and he agreed to do so. According to Morse, they never discussed money and Schoonover never told her he expected payment for storing the items. Morse did not pay Schoonover to move the property. Morse stated that she would not have had Schoonover tow the property if she had known he expected payment for towing and storage. Morse stated that she did hire Schoonover to retrieve a truck from a relative in Brownwood. And, she paid him $800 and Schoonover sold that truck for her.

In 2011, Morse installed a security system on her premises and asked Schoonover to return her property. Schoonover told her he would, but he repeatedly made excuses to delay the transfer. Later, she drove by his premises, noticed some of her items were missing, and called him. Schoonover told her the items were his. When Morse requested her property, Schoonover informed Morse that the property had been sold at auction to satisfy storage fees. Morse stated that Schoonover never asked her for payment and she never received a bill from him.

During the trial, appellants produced towing consent slips for a 1998 Ford F-250 truck, a 1985 Ford truck, a 1994 Allegro Bay recreational vehicle, and a 1995 gooseneck trailer. Morse's signature appears on three of the slips, granting consent to tow the vehicles, and the slips for the two trucks include a $200 towing charge

and a $20 per day storage fee. No fee appears on the slip for the recreational vehicle. No consent to tow appears on the towing slip for the gooseneck trailer, which indicates a towing fee of $250 and a $20 per day storage fee. Morse testified that it looked like her signature on the towing slips, but she denied that towing and storage charges appeared on any document that was shown to her when Schoonover took the vehicles and equipment. Additionally, a slip for a "Ford Platinum," which is signed only by Russell Schoonover, bears the handwritten notation, "Sold to James Mills – I went took cash to Mrs. Morse and she gave me the title and paid me."

Schoonover testified that his signature appears on the slips but other handwriting on the documents was made by his wife. Schoonover stated that his wife made an invoice for each thing that was taken, but he did not say when the invoice was prepared, and he admitted that Morse was never given an invoice and was never billed for any towing or storage of the property that Schoonover took into his possession. Schoonover stated that after taking possession of property he had five days to locate and notify the title owner. He claimed to have sent notices to the registered owners, but neither the notices nor proof of mailing of the notices were offered into evidence during the trial. Although he had taken possession of

6

the property under the authority of Morse's signed consent, Schoonover stated that he never sent her a bill because the property did not belong to her.

Schoonover stated that he picked up the hydraulic dump trailer before Steven Morse died. Schoonover stated that he borrowed it from Steven Morse and "he told me to keep it on my property for now." Steven Morse did not ask Schoonover to return the hydraulic dump trailer. According to Schoonover, within a week Morse sold an iron worker machine and he did not charge Morse for that or a toolbox. He agreed that Morse paid him $800 to pick up a truck, but according to Schoonover, Morse sold the 2001 Ford Platinum truck and gave him money for it "out of her heart" although she "didn't owe any money."

Schoonover testified that he bought the recreational vehicle for $3,200 at auction, but the sale has never been processed because "Auto Theft" advised him not to, and at the time of the trial the vehicle was in the possession of his company. According to Schoonover, he foreclosed on a lien on the 1998 Ford on July 16, 2011. Schoonover presented no documentation of the foreclosure. He stated that the 1998 Ford truck was sold at auction more than one year before the trial, but no certificate of title was offered into evidence during the trial. He testified that the gooseneck trailer, the pull trailer, and the hydraulic dump trailer were still on his property. According to Schoonover, the concrete finishing equipment had been

7

towed off of his property, and Morse was aware the equipment had been removed, and he "tried to make a police report[,]" but no report was produced at trial. Schoonover stated that he was holding the 1985 Ford truck for Morse's granddaughter Katy.

Heather Schoonover testified that on the day they picked up the property and again the following day when Morse came to their office, she explained to Morse and Cochran what the charges were and how they worked. She thought they understood that they were responsible for the charges. Heather Schoonover testified that she never sent Morse a bill. She testified that the recreational vehicle was auctioned sometime in 2011, and that only two trucks were sold. According to Heather Schoonover, Morse paid them $800 for a sale of a Ford Platinum truck that was not the truck Morse paid them to repossess for her. In addition, the Schoonovers sold two trucks for $500 each and applied the proceeds to outstanding charges. Heather Schoonover stated they bid $3,000 for the recreational vehicle and applied the purchase price "towards the bills that she was trying to pay." Heather Schoonover said that she mailed certified letters to the registered owners, although she knew Steven Morse was dead.

Testifying as a defense witness, Amber Cochran stated that the Schoonovers knew Morse inherited Steven Morse's estate. Cochran did not know the terms of

their agreement, but Morse knew the Schoonovers would charge for towing and storing the property. Cochran stated that she never discussed the storage charges with Morse or anyone else. Cochran had been the office manager for Steven Morse's company, AMS Metal Construction, Inc. She testified that the 1985 Ford truck had been promised to her step-sister, that Steven Morse told Schoonover to keep the hydraulic dump trailer in exchange for repossessing a car, and that the trailer with concrete equipment was still at Texan but some equipment had been stolen off of the trailer and Morse had been notified of the theft. Cochran stated that the Schoonovers picked up a 1998 Ford truck, a gooseneck trailer, a pull trailer, a toolbox, an iron working machine, and a boat.

## CONVERSION

Conversion is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971).

> To establish a claim for conversion of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

9

*Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.).

Issue one contends the evidence is factually insufficient to support the trial court's finding that Morse was the actual owner of the property and had standing to bring suit. Appellants challenge a single element of Morse's claim for conversion: that she owned or had legal possession of the property or entitlement to possession. *Id.*

Appellants argue insufficient evidence supports Morse's claim that she inherited the property. Although the will was not in evidence, Morse testified that she inherited Steven Morse's estate, that the estate went through probate, and that the property over which the appellants exercised dominion and control was listed in the inventory filed with the probate court. In her testimony concerning the recreational vehicle Morse stated that her son "got it under his company." As the sole beneficiary of her son's estate she would inherit his interest in the company. No evidence appears in the record that would contradict Morse's testimony. Morse testified she probated her son's will and that she was the sole beneficiary of his estate.

Appellants contend Morse failed to prove that she owns the property because she was not the registered owner on the title to each motor vehicle. "The name on

the certificate of title is not conclusive of ownership." *Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 321 (Tex. App.—El Paso 2006, no pet.). In the Certificate of Title Act, "'Owner' means a person, . . . claiming title to or having a right to operate under a lien a motor vehicle that has been subject to a first sale." Tex. Transp. Code Ann. § 501.002(19) (West 2013). Appellants seem to argue that Morse is not the owner of the vehicles because she failed to obtain a new title issued in her name. *See* Tex. Transp. Code Ann. § 501.074(a) (West 2013) (the Department of Motor Vehicles shall issue a new title for a motor vehicle registered in Texas for which ownership is transferred by operation of law after receiving letters testamentary or letters of administration). But, the estate of a person vests immediately on his death. *See* Tex. Est. Code Ann. § 101.001 (West 2014) (formerly codified as Tex. Prob. Code Ann. § 37).[2] Ownership of a vehicle, like other property of a deceased person, transfers to the heir or devisee immediately upon the death of the owner on the title. *See id.* As recognized in section 501.074 of the Certificate of Title Act, ownership transferred by operation of law. *See* Tex. Transp. Code Ann. § 501.074(a). Consequently, Morse would be the "owner" of the vehicles she inherited through her son's estate. *See id.* Morse's failure to

_____

[2]The Texas Probate Code was still in effect at the time of Steven Morse's death. The parties do not argue that any section of the Texas Estates Code materially differs from any section of the former Probate Code. Accordingly, we cite to the current statute.

11

present the Texas Department of Motor Vehicles with documentation establishing the transfer of ownership by operation of law might have prevented her from transferring the title in a subsequent sale until she complied with the Certificate of Title Act, but Morse did not sell any of the vehicles so her failure to comply with the Act does not defeat her standing to bring a claim for conversion as the representative and beneficiary of the decedent's estate. *See* Tex. Transp. Code Ann. §§ 501.071, 501.073, 501.074(a) (West 2013); *see also* Tex. Est. Code Ann. § 351.054 (West 2014) (formerly codified as Tex. Prob. Code Ann. § 233A). Furthermore, Morse had the right to possession of the estate as it existed at Steven Morse's death. *See* Tex. Est. Code Ann. § 101.003 (West 2014) (formerly codified as Tex. Prob. Code Ann. § 37). The record does not show that Morse, who was the estate's representative and beneficiary, lacked standing to pursue a claim for conversion. We overrule issue one.

## UNLAWFUL POSSESSION

In issue three, appellants contend that the evidence is factually insufficient to support a finding that they converted the property in dispute to the detriment of Morse. The trial court could have impliedly found that the appellants unlawfully and without authorization assumed and exercised dominion and control over the

12

property to the exclusion of, or inconsistent with, Morse's rights as an owner. *See Waisath*, 474 S.W.2d at 446.

Nevertheless, appellants argue that the evidence demonstrates that they exercised their contractual right to foreclose on three vehicles that had been towed and stored for Morse. However, Russell Schoonover testified that no foreclosure occurred concerning the 1985 Ford truck. And, appellants cannot rely on a non-judicial foreclosure for authorization to possess property if by their own testimony no foreclosure occurred. With regard to their argument that the evidence supports a finding that Schoonover or Texan exercised contractual rights to sell or foreclose upon the other two vehicles, none of the documents that bear Morse's signature purport to grant Schoonover or Texan a right to dispose of the vehicles in the event of non-payment. Any right to resort to non-judicial foreclosure must therefore derive from the law, but appellants did not identify a legal basis for the alleged foreclosure in their pleadings, or during the trial, or on appeal. And, appellants did not produce any documents to support their contention they possessed a lien, or that they foreclosed upon a lien.

The Schoonovers testified that they never billed Morse for towing and storage. They refer this Court to towing consent slips for a 1998 Ford F-250 truck, a 1985 Ford truck, and a 1994 Allegro Bay recreational vehicle. Department of

Motor Vehicles reports that the Schoonovers obtained on June 22, 2009, indicate that the vehicles were registered to Steven Morse and AMS Metal Construction, Inc. The Schoonovers testified that they sent notices of some sort to the owners listed of record by the Texas Department of Motor Vehicles, but the notices were not produced in court.

In making credibility determinations, a fact-finder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Wilson*, 168 S.W.3d at 819. However, a trial court may consider the absence of corroborating documentation when determining the credibility and weight to be given to the witness's testimony. *See Johnson v. Johnson*, No. 09-13-00537-CV, 2014 WL 5855916, at *2 (Tex. App.—Beaumont Nov. 13, 2014, no pet. h.) (mem. op.). The documents in the appellate record do not provide clear, positive, and readily controverted evidence that appellants complied with all contractual duties and statutory procedures required to lawfully withhold possession of Morse's property.

The trial court could have found that Schoonover and Texan claimed their possession of Morse's property was authorized by virtue of a garageman's lien. *See, e.g.,* Tex. Prop. Code Ann. § 70.003(c) (West 2014) ("A garageman with whom a motor vehicle, motorboat, vessel, or outboard motor is left for care has a

14

lien on the motor vehicle, motorboat, vessel, or outboard motor for the amount of the charges for the care, including reasonable charges for towing the motor vehicle, motorboat, vessel, or outboard motor to the garageman's place of business and excluding charges for repairs."). Assuming for the sake of argument that their towing slips with Morse permitted them to sell the two vehicles without providing notice to her, the trial court could reasonably have rejected the witnesses' unsupported statements that notices were mailed to Steven Morse and AMS Metal Construction, Inc., at the addresses in the Department's records. *See Johnson*, 2014 WL 5855916, at *2. Considering the lack of testimony or documentation demonstrating full compliance with the garageman's lien statute, the trial court also could reasonably have found that Schoonover and Texan failed to send notices that complied with the garageman's lien statute. *See* Tex. Prop. Code Ann. §§ 70.004(a), (b), 70.005(a), 70.006(a), (b) (West 2014).

Moreover, the Schoonovers' testimony regarding their attempted notice of a possessory lien on the two vehicles registered to Steven Morse and his company does not demonstrate their compliance with regard to any of Morse's property which was not subject to the Certificate of Title Act. It is undisputed that Morse inherited her son's personal property and that no notice of any kind was provided to her. Additionally, although the witnesses disagreed about how the hydraulic

15

dump trailer came to be on Schoonover's property, everyone agreed that Schoonover borrowed it and no one testified that it was towed and stored for Morse's benefit. Appellants had no legal authority to assert a garageman's lien on property admittedly borrowed for appellants' own use and benefit.

The trial court could reasonably have found that any right to possess the property which arose by virtue of an alleged lien was not properly enforced. The Schoonovers testified that they sold some of the vehicles to satisfy a claim for towing and storage, but they did not produce documents that proved they gave notice that satisfied any statute that authorizes non-judicial foreclosure. We overrule issue three.

## DAMAGES

In issue five, the appellants contend the evidence is factually insufficient to support any finding that Morse sustained damages in the amount found by the trial court. "Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997). "Market value is defined as the price property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it." *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex. 1981). "To establish

16

conversion damages, the original cost in the market, and the manner, time, and place of use, the condition of the property and the relative usefulness before and after the alleged injury may be offered into evidence." *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App.—Dallas 2014, no pet.).

Appellants argue that Morse failed to prove actual damages of $33,100 because the Schoonovers testified that they received only $4,200 for the three vehicles they sold at auction. The Schoonovers' testimony was not the only evidence in the record concerning the value of the converted property. An inventory of the property from Steven Morse's estate, dated approximately one year before Schoonover took possession of the property, was introduced into evidence. Morse did not recall how the values on the inventory were determined, but the inventory represented valuations pertaining to the property. The stated value on the inventory for the items Morse claimed had been converted includes: $500 for the 1985 Ford truck, $3,000 for a 1999 Chevy truck, $3,000 for the 1998 Ford truck, $3,000 for a 1990 Ford flatbed truck, $7,000 for a gooseneck trailer, $500 for a pull trailer, $3,000 for the hydraulic dump trailer, $100 for a tool box, and $2,000 for concrete equipment. Morse testified that her son purchased the recreational vehicle three months before he died. Russell Schoonover stated the recreational vehicle's value was $18,000 and the Department of Motor Vehicles

17

report has a sale price of $17,635. Therefore, some evidence in the record supports a finding of at least $33,100 in actual damages. We overrule issue five.

BREACH OF CONTRACT AND FRAUD

In issues two and four, the appellants contend the evidence is factually insufficient to support a judgment on Morse's claims for breach of contract and fraud. These issues relate to alternate theories of recovery. We do not reach these issues because we affirm the trial court's judgment on Morse's claim for conversion. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). The trial court's judgment is affirmed.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 15, 2014
Opinion Delivered December 11, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.