WELLS FARGO BANK, MINNESOTA, N.A., Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass through Certificates, Series 2001–C1, Acting by and through its Special Servicer, GMAC Commercial Mortgage Corporation, Appellants

v.

NORTH CENTRAL PLAZA I, L.L.P., Appellee.

No. 05–05–00833–CV.

Court of Appeals of Texas, Dallas.

June 23, 2006.

Jay J. Madrid and Talmage Boston, Winstead, Secrest & Minick, P.C., Dallas, for Appellant.

Cavitt Wendlandt, Asst. Atty. Gen., Austin, Robert B. Crotty, Crotty Law Firm, Dallas, John McClish, Wall & Foster, P.C., Austin, Richard A. Sayles, Eric D. Pearson, Sayles, Lidji & Werbner P.C., Dallas, for Appellee.

Before Justices WRIGHT, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice WRIGHT.

Wells Fargo Bank appeals from the trial court's judgment finding North Central Plaza I, L.L.P. (NCPI) entitled to condemnation proceeds and awarding $875,000 in damages as a result of the condemnation of certain property. The trial court determined entitlement to the proceeds through partial summary judgment. The jury determined the amount of damages. In three points of error, Wells Fargo contends: (1) the trial court erred in determining that NCPI was entitled to the condemnation proceeds; (2) the trial court erred in allowing NCPI to enforce its interpretation of the deed of trust because NCPI had committed defaults under the deed; and (3) the trial court erred in awarding attorney's fees to NCPI on its declaratory judgment claim. We sustain Wells Fargo's first and third points of error.[1] We reverse and render, in part, and remand, in part. We reverse the trial court's judgment and render judgment that Wells Fargo recover the $875,000 as damages for the condemnation. We reverse and remand the issue of attorney's fees to the trial court.

## Background

On December 7, 2000, NCPI purchased 4.454 acres of land and an office building located on Central Expressway in Dallas. In purchasing the property, NCPI obtained a loan from Archon Financial L.P. The loan documents included: (1) a non-recourse deed of trust note in the amount of $14,400,000; and (2) a deed of trust. The deed of trust provided that the entire property would be collateral to secure the non-recourse note. Subsequently, Wells Fargo became the successor lender to NCPI when it purchased the non-recourse note and the other documents from Archon.

Prior to NCPI's purchase of the property, the State of Texas commenced condemnation proceedings to take 0.1956 acres of property out of the total 4.454 acres. After NCPI purchased the property, the State amended its petition naming NCPI as the defendant. The Commissioners signed an award in the amount of $1.00 which the State deposited into the court's registry on October 1, 2001. NCPI filed a conditional plea to the jurisdiction and objection to the award on June 11, 2002.

Subsequently, NCPI defaulted on the non-recourse note by failing to make its mortgage payments. Wells Fargo gave NCPI notice of the default and foreclosed on the property under the deed of trust on December 3, 2002. The foreclosure sale price was $5,000,000. Wells Fargo was left with a $9,213,615 deficiency.

Wells Fargo intervened in the condemnation case to protect its purported right to the proceeds. NCPI and Wells Fargo filed motions for partial summary judgment on the issue of which party was entitled to the condemnation proceeds. The trial court granted NCPI's motion and denied Wells Fargo's motion. The issue of the amount of damages resulting from the condemnation was tried to a jury. The jury awarded damages in the amount of $875,000. Based in part on its previous summary judgment finding that NCPI was entitled to the condemnation proceeds, the trial court rendered judgment for NCPI in the amount of $875,000 and awarded NCPI its attorney's fees. This appeal timely followed.

---

1. As a result of the Court's disposition of Wells Fargo's first point of error, it is unnec-essary to address its second point of error.

## The Condemnation Award

In its first point of error, Wells Fargo contends the trial court erred in its determination that NCPI was entitled to the condemnation proceeds. Specifically, Wells Fargo contends that the proceeds were trust property that it acquired through the foreclosure sale. Neither NCPI nor Wells Fargo contend that the deed of trust is ambiguous. The parties disagree over the interpretation of certain provisions contained in the deed of trust.

The interpretation of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999). When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining the entire writing in an effort to give effect to the parties' intentions as expressed in the contract. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The parties' intent must be taken from the agreement itself and the agreement must be enforced as written. *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.). A court must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions will be rendered meaningless. *Coker* 650 S.W.2d at 394. No single provision taken alone will be given controlling effect. *Id.* at 393. All provisions of a contract must be considered with reference to the entire instrument. *Id.*

Courts turn to rules of construction to resolve conflicts in contract provisions. Among those rules are: (1) specific provisions control over general provisions; (2) provisions stated earlier in an agreement are favored over subsequent provisions; and (3) the interpretation of an agreement should not render any material terms meaningless. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994); *Coker*, 650 S.W.2d at 393; *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995).

We turn now to the construction of the deed of trust. The term "trust property," as defined in the deed of trust, includes:

(c) all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements except for any award or payment payable to Trustor in connection with that certain condemnation in connection with the IH 635 and U.S. Highway 75 interchange condemnation (the "IH635/U.S. Highway 75 Interchange Condemnation") *provided such condemnation does not impair the use or decrease the value of the Premises or Improvements.*

(emphasis added). Pursuant to this definition, if the IH635/U.S. Highway 75 Interchange Condemnation (the "Condemnation") does not result in a decrease in the property's value, then, NCPI retains the award. On the other hand, if the Condemnation results in a decrease in the property's value, then the award is part of the trust property. Upon default under the non-recourse deed of trust note, the lender may sell the property through foreclosure. Pursuant to section 25(d) under the deed of trust, a foreclosure sale operates to "divest all the estate, right, title, interest, claim and demand whatsoever, whether at

law or in equity, of Trustor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Trustor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Trustor."

Based on these provisions in the deed of trust, Wells Fargo contends the trial court erred in finding NCPI entitled to the proceeds. Wells Fargo argues the undisputed summary judgment evidence showed that the value of the property decreased. The only evidence as to the effect of the Condemnation on the property's value was the report and deposition testimony of David Bolton, the real estate appraiser hired by NCPI. Bolton determined that the property's market value decreased by $5,260,000 as a result of the Condemnation. Thus, Wells Fargo contends that it is entitled to the proceeds as trust property because the undisputed evidence showed the Condemnation caused a decrease in the property's value. For reasons that follow, we conclude the trial court erred in its determination that NCPI was entitled to the Condemnation proceeds.

NCPI cites another provision of the deed of trust to support its contention that the trial court properly awarded it the proceeds. In support of NCPI's interpretation of the deed of trust, it relies upon a paragraph labeled "Condemnation." Paragraph 4 provides, in pertinent part, as follows:

4. ***Condemnation.*** Trustor shall promptly give Beneficiary written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding (a "Condemnation") and shall deliver to Beneficiary copies of any and all papers served in connection with such Condemnation. Following the occurrence of a Condemnation, Trustor, provided

the Award, if any (hereinafter defined) is made available, to Trustor shall promptly proceed to restore, repair, replace or rebuild the same to the extent practicable to be of at least equal value and of substantially the same character as prior to such Condemnation, all to be effected in accordance with applicable law and regardless of whether the Award is sufficient to completely cover the cost of such restoration, repair or rebuild.

\* \* \*

(c) ... If the trust property is sold, through foreclosure or otherwise, prior to the receipt by Beneficiary of such Award, Beneficiary shall have the right, whether or not a deficiency judgment on the Note shall be recoverable or shall have been sought, recovered or denied, to receive all or a portion of said Award sufficient to pay the Debt.

\* \* \*

(e) Notwithstanding any provisions contained in this paragraph 4 Deed of Trust, Trustor shall be entitled to retain any award paid in connection with IH635/U.S. Highway 75 Interchange Condemnation.

NCPI asserts in its appellate brief that "[b]ecause Paragraph 4, the section on Condemnation, expressly addresses the issue at hand—who is entitled to the Condemnation Award—it is more specific and directly applicable than the general section describing Trust Property." We disagree. Paragraph 4, by its terms, concerns condemnations that arise *after* the parties sign the deed of trust. Paragraph 4 begins, "Trustor shall promptly give Beneficiary written notice of the actual or threatened commencement of any condemnation

or eminent domain proceeding ..." At the time the deed of trust was drafted, the Condemnation proceeding was pending and Archon Financial, the beneficiary, had notice of it. The deed of trust itself addresses the pending Condemnation. We conclude that paragraph 4 does not apply to the Condemnation proceeding already pending, therefore, it gives no support to NCPI's argument that its provisions are more specific and, therefore, controlling.

NCPI contends that paragraph 4(e) controls over the trust property definition. Subsection (e) merely clarifies that paragraph 4 does not apply to any condemnation award in connection with the subject property because that Condemnation proceeding was pending prior to the deed of trust. Moreover, under NCPI's interpretation, subsection (e) means: NCPI retains the award from the IH635/U.S. Highway 75 Interchange Condemnation *no matter what other provisions of the deed of trust provide.* NCPI's interpretation, however, renders the word "notwithstanding" meaningless. The use of "notwithstanding" means that any award for the pending Condemnation will not be subject to the obligations imposed by *paragraph 4* on awards from newly commenced condemnation proceedings. Use of "notwithstanding" indicates that provisions, other than paragraph 4, impose limitations on NCPI's right to retain an award from the pending Condemnation. Accordingly, NCPI is not entitled to the proceeds as trustor under paragraph 4(e). Wells Fargo is entitled to the proceeds as owner of the trust property as that term is defined in subsection (c) of the trust property definitions.

Interpreting subsection (e) to mean nothing in paragraph 4 prevents NCPI from retaining the Condemnation award *provided that the Condemnation does not decrease the value of the property* is consistent with rules of contract construction.

The reference to the Condemnation in the definition of trust property as "the IH635/U.S. Highway 75 Interchange Condemnation *provided such condemnation does not impair the use or decrease the value of the Premises or Improvements"* is more specific than the general reference to "the IH635/U.S. Highway 75 Interchange Condemnation" in 4(e). *See Forbau,* 876 S.W.2d at 133–34. Also, the more specific reference appears first in the deed of trust. *See Coker,* 650 S.W.2d at 393.

NCPI argues that this interpretation renders paragraph 4(e) meaningless because a condemnation always results in a decrease in a property's value. This is not true. A condemnation does not necessarily result in a decrease in the value of the property. Where a property's value actually increases after a portion of the property has been condemned, the owner is still entitled to an award equal to the market value of the property taken. *Westgate, Ltd. v. State,* 843 S.W.2d 448, 456 (Tex.1992); *Cameron County Drainage Dist. No. 5 v. Gonzales,* 69 S.W.3d 820, 824 (Tex.App.-Corpus Christi 2002, no pet.). When only a portion of property is taken, the constitution requires adequate compensation both for the part taken and severance damages, if any, to the remaining property. *State v. Schmidt,* 867 S.W.2d 769, 772 (Tex.1993).

Because the undisputed evidence showed that the property's value did, in fact, decrease, the trial court erred in its determination that NCPI was entitled to the Condemnation proceeds. Accordingly, we sustain Wells Fargo's first point of error.

### Attorney's Fees

In its third point of error, Wells Fargo contends the trial court erred in awarding attorney's fees to NCPI. This Court has reversed the trial court's judgment awarding the Condemnation proceeds to NCPI

and rendered judgment that Wells Fargo recover the proceeds. In light of this Court's ruling, we sustain Wells Fargo's third point of error and reverse the trial court's award of attorney's fees and remand that issue to the trial court.

### Conclusion

We reverse the trial court's judgment, in part, and render judgment that Wells Fargo recover the $875,000 condemnation award. We reverse and remand the issue of attorney's fees to the trial court.