**REVERSE, RENDER, AFFIRM, and REMAND; Opinion Issued November 2, 2012.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-10-01028-CV

---

### CAPITAL ONE, N.A., Appellant

### V.

### STANLEY C. HADDOCK, Appellee

---

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-13162**

---

## OPINION

Before Justices O'Neill, Richter, and Lang
Opinion By Justice O'Neill

Appellant Capital One, N.A. appeals a judgment awarding damages to Stanley C. Haddock for breach of a "cross-easement agreement." Haddock has raised a conditional cross-point, asserting if we reverse the judgment on his breach of contract claim, we should also reverse the trial court's order granting Capital One's motion for summary judgment on his quantum meruit claim. For the following reasons, we reverse the trial court judgment on Haddock's breach of contract claim and render judgment that Haddock take nothing on that claim. We affirm the trial court's judgment granting summary judgment in favor of Capital One on Haddock's quantum meruit claim.

This dispute concerns which of two adjacent landowners, Capital One or Haddock, is responsible for the cost of a driveway Haddock constructed on Capital One's property. Prior to

2004, Haddock, a real estate developer, acquired the rights to purchase adjoining tracts of land in the City of Wylie. Prior to that time, the tracts had been owned and developed separately, and there was no access between the tracts and each relied on its own approaches for access to surrounding public streets.

In 2004, Capital One[1] contacted Haddock about purchasing the easternmost tract. While negotiating the sale, Haddock and Capital One representatives met with city officials to discuss the City's requirements for any redevelopment. The City told Haddock and Capital One that the tracts would have to be developed as one site, and that the public access points to the surrounding streets had to be reconfigured. Specifically, the City was going to require that the two existing access points on the Haddock and proposed Capital One tracts be closed and one new access point to be constructed on the Capital One tract. The new access location would allow the driveway to line up with Mardi Gras Street, which intersected with Kirby across from the Capital One tract. The City also required Haddock to close the approach on his tract because it was too close to the intersection to the west, posing safety and traffic flow concerns.

In May 2004, the parties executed the Purchase Sale Agreement (PSA). The PSA required the parties to negotiate in good faith a cross-easement agreement (CEA) to allow for access between the Haddock and Capital One tracts. The parties subsequently executed a CEA. The CEA set forth the required access areas between tracts and required Capital One to join the tracts, paving the internal drives such that there would be a seamless transition between the tracts. However, the CEA did not include any provisions for reconfiguration of access points or obligations to pay for construction or paving of access points. A preliminary site plan attached to the CEA likewise

---

[1] In 2004, Capital One was actually known as Hibernia Bank. At some point in 2007, Capital One succeeded to Hibernia's interests relevant in this appeal. For clarity, we refer to the bank as Capital One throughout.

showed the access areas between the tracts, but did not include any proposed changes in reconfiguration of public access.

After the bank purchased the property, it began its development. Capital One's preliminary paving plan showed an approach to Kirby Street on Capital One's tract, lining up with Mardi Gras Street, would be constructed at some point in the future. Capital One's final plat included a dedication of an easement for public use to allow for such a driveway approach. According to Claude Thompson, director of planning and zoning for the City from 2000 until January 2006, Capital One's plan would not have been approved without the access point at that location.

When Capital One began its construction, it started the process of building the approach. However, according to Haddock, the City instructed Capital One it could not build the public approach until Haddock closed the approach on his property. Haddock could not do so until his tenant vacated the premises, which was to occur in about six months. Capital One ultimately concluded its construction, without constructing the approach, and obtained an unqualified Certificate of Occupancy (CO). A CO indicates all governmental requirements, directives, and orders with respect to that property have been complied with as of that date.[2]

In 2007, Haddock began developing his property. Haddock submitted several plans to the City to address various issues and concerns. Ultimately, Haddock submitted a final plan to the City in July 2007 that closed his existing approach and included a new "shared approach" to Kirby Street, mostly on Haddock's property, but partially on Capital One's property. This approach was in a different location than the one shown on Capital One's plat. According to Haddock, this plan was submitted by mistake and the driveway should have been entirely on the bank's property in

---

[2] The City can, and does sometimes, issue temporary CO's allowing a business to open with the understanding that certain conditions will be have to complied with in the future in order to get its final permit CO.

accordance with the City's prior directives.[3]  Nevertheless, the City approved the plan.

Haddock testified he first noticed the mistake in early September 2007 when he began staking his tract to begin construction. He immediately called the city engineer, Chris Holstead. Haddock met Holstead at the site soon thereafter to discuss the issue. Haddock testified Holstead told him the approach needed to be moved entirely onto the Capital One's property in accordance with the prior plans and requirements. Using a "Sharpie," Holstead drew on the plan where the approach needed to be located. According to Haddock, Holstead told him to tell Capital One that Capital One had to "finish" their driveway and "connect" it to the street.

After speaking with Holstead, Haddock met with Capital One representative Brian Smith and showed him the plan Holstead had revised. Haddock said he told Smith the City had "ordered" the bank to "complete their driveway." Smith told Haddock that the bank didn't have the budget, but Haddock could construct it. Haddock responded it was the bank's obligation to construct the driveway. Smith said he would confer with other Capital One representatives. Thereafter, Haddock tried to follow up with others at Capital One, but they would not return his calls. In December, Haddock called Holstead and told him the bank was not returning his calls. Holstead told Haddock to go ahead and "pour the concrete." Haddock asked Holstead for a letter from the City to send to Capital One. In response, Holstead sent Haddock a letter instructing Haddock to relocate the driveway onto the bank's property. Haddock sent the letter to Smith and told him if the bank did not construct the driveway, he would. Capital One did not respond and Haddock constructed the driveway to Kirby Street. In July 2008, Haddock sent Capital One a letter demanding it pay for the cost of construction.

---

[3] Haddock testified the reason his architect created such a plan was because a city council person had requested to see whether Haddock would have had sufficient parking if the driveway had been placed in the hypothetical location.

Holstead testified by deposition and confirmed Haddock's testimony in some regards. He stated that he had met with Haddock to discuss the location of the approach and they agreed that the "best location" would be to line it up with Mardi Gras Street to the south. Holstead testified that Capital One had previously been told the approach had to be across from Mardi Gras. Because Haddock's plan did not place the driveway in that location, Holstead wrote the change on the plan. Holstead testified he was permitted to make such changes to development plans in "the field." Holstead said he told Haddock he would have to contact Capital One because the approach was on the bank's property, but he denied telling Capital One it had to construct or pay for the approach and he was unaware of anyone else at the City so instructing Capital One.

Brian Smith testified that in late 2007, Haddock had demanded Capital One help pay for a shared approach, but the bank did not agree. He testified the City never told Capital One that it had a present obligation to construct a driveway. Smith conceded earlier plans Capital One had submitted, and the City approved, provided for the approach on Capital One's property.

After hearing the evidence, the trial court found in Haddock's favor, concluding Capital One breached the CEA by failing to comply with governmental requirements. In its findings of fact, the trial court found the parties entered into the CEA making "each party responsible for the cost of work necessary to comply with governmental requirements on their respective tracts." The trial court found the City "ordered" a driveway on Capital One's tract be completed and that Capital One's failure to do so constituted a breach of the CEA. It appears from its findings that the "orders" the trial court was referencing concerned statements the City made to Capital One in 2005 and 2006 discussing development plans, Capital One's final plat that included a dedication for public access, and statements Holstead later made to Haddock regarding location of the approach. The trial court awarded $21,882.14 in actual damages and $100,589.50 in attorney fees. In this appeal, Capital One

generally asserts there is no evidence it breached the CEA.

In an appeal from a bench trial, a trial court's findings have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's findings may be reviewed for legal and factual sufficiency under the same standards that are applied in reviewing evidence to support a jury's answers. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We review a trial court's conclusions of law de novo to determine whether the trial court drew the correct legal conclusions from the facts. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Hackenjos v. Hackenjos*, 204 S.W.3d 906, 908 (Tex. App.—Dallas 2006, no pet.). We are not bound by the trial court's conclusions of law and will review them independently to determine their legal correctness. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.*, 53 S.W.3d 382, 389 (Tex. App.—Dallas 2000, pet. denied).

The interpretation of an unambiguous contract is a question of law for the court. *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). When parties disagree over the meaning of an unambiguous contract, the court must determine the parties' mutual intent by examining the entire instrument. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.—Dallas 2006, pet. denied). The court must favor an interpretation that harmonizes and gives effect to all the provisions of the contract so that none will be rendered meaningless and no single provision taken alone will be given controlling effect. *Heritage Res.*, 939 S.W.2d at 121; *Wells Fargo*, 194 S.W.3d at 726. Unless the agreement shows the parties used a term in a technical or different sense, the terms are given their plain, ordinary, and generally accepted meaning. *Heritage Res.*, 939 S.W.2d at 121.

The sole question presented here is whether Capital One breached the CEA by failing to construct the approach to Kirby Street. It is unclear from the trial court's findings of fact and conclusions of law exactly which provision or provisions of the CEA Capital One breached, but Haddock alleges two provisions support the trial court's conclusion. First, Haddock relies on article 3.1 of the CEA concerning "Maintenance." Article 3.1 of the CEA, provides "[e]ach tract owner shall have the duties and responsibilities, at its sole cost and expense, *to keep and maintain* the driveways, parking areas, access entrances (including the Access Areas) and exits, including curb cuts and curbs, on its tract, in good repair, working and operable order and in a safe, clean and attractive condition at all times." According to article 3.1, such duties include (1) keeping parking areas, driveways, road, curb cuts and curbs in good repair, and (2) complying with all applicable government requirements.

The trial court's judgment is based on its findings that (1) at the time the City approved Capital One's plat it required a driveway to be placed at the Mardi Gras location, (2) Capital One began constructing such a driveway, but was required to stop construction until Haddock's driveway could be closed, and (3) Capital One then failed to complete its driveway when the City told Haddock the driveway had to be completed. According to Haddock, these findings support a conclusion that Capital One failed to "keep" or "maintain" its driveways in "working and operable order" because Capital One started to construct the public approach, but did not "finish" it.

The CEA required the tract owners to "keep and maintain" existing, relocated, and future driveways and curb cuts, but did not impose an obligation to construct any new driveways or approaches. Haddock's argument presumes there existed a driveway that was not "kept" in working and operable order. While there was evidence the bank started to construct an approach to Kirby Street, it did not do so and instead constructed a curb at Kirby Street. After it completed this

–7–

construction, the City issued a CO to Capital One. Thus, the bank's improvements complied with the governmental requirements at that time, and there was no driveway that was not in "working and operable order" at that time. The bank's later directive to Haddock to have the public approach constructed did not concern the bank's failure to "keep or maintain" a drive or approach because such an approach did not exist. Therefore, the bank's failure to construct the approach did not violate section 3.1 of the CEA.

Haddock next relies on Article 8 of the CEA. Article 8, entitled "Uses and Prohibited Uses," begins with the following "General" requirement:

> No use shall be permitted on the Tracts which is not allowed under applicable Governmental Requirements. Each Tract Owner, Occupant or other user of any portion of the Tracts at all times shall comply in every respect with this agreement and with any and all laws, ordinances, policies, rules, regulations and orders of all federal, state, county, and municipal governments or their agencies having jurisdictional control over the tracts.

Specific provisions detailing prohibited "uses" and "activities" followed. We begin by noting that Haddock's claim that the bank was required to construct an approach on its property does not concern a use or activity on the property. Regardless, assuming this provision is not limited to uses or activities on the tracts, we conclude there is no evidence that the bank failed to comply with a government requirement.

The CEA provides, "'[g]overnment requirements' shall mean all laws, ordinances, statutes, codes, rules, regulations, orders and decrees of the United States, the state, county, city, or any political subdivision in which the Tracts are located, and any other political subdivision, agency or instrumentality exercising jurisdiction over the Tracts . . . " Haddock contends the bank breached article 8 because the City required an approach to be constructed on the bank's tract.

–8–

The evidence showed the City had intended to require Capital One to build an approach to Kirby when it approved Capital One's plan. There was also evidence that Capital One's plat included a public dedication for this purpose. But Capital One developed its tract without constructing such a driveway and the City issued Capital One a Certificate of Occupancy. The City engineer testified that notwithstanding the fact the City issued a CO to the bank, the City could still later require the bank to construct the approach in accordance with its development plan and its dedication in the final plat. However, the question is not whether the City could have ordered the bank to construct the driveway, but whether the City ever actually did so. We conclude it did not.

It is undisputed that the City did not require the bank to construct the approach at the time it developed its property. Indeed, the City prohibited the bank from doing so at that time. Later, when Haddock was seeking to develop his property, the City informed Haddock an approach had to be constructed on Capital One's property. But there is no evidence of any steps taken by the City directed toward the bank that would have triggered any requirement that it construct the driveway. Rather, all the directives Haddock relies on to show the City ordered the driveway were directed to Haddock, and Haddock ultimately constructed the approach to obtain the approval he needed to develop his own property. Because there is no evidence the City ever requested, informed, or ordered Capital One to construct the approach, we conclude there is no evidence Capital One "failed to comply" with a government regulation. Consequently, we conclude there is no evidence that Capital One breached the CEA.

Haddock brings a conditional cross-point asserting that, if the trial court erred in granting judgment on the breach of contract claim, it also erred in granting Capital One's motion for summary judgment on his quantum meruit claim. Prior to trial, the bank filed a no-evidence motion for summary judgment on Haddock's quantum meruit claim asserting there was no evidence (1)

Haddock provided valuable services or materials "to" and "for" Capital One, (2) Capital One "accepted" such services or materials, or (3) Capital One had reasonable notice that Haddock expected compensation for any services or materials provided. The bank also filed a traditional motion for summary judgment on the quantum meruit claim asserting it had negated the above elements as a matter of law. It also alleged there could be no quantum meruit claim when a contract exists between the parties covering the same subject matter. The trial court granted the motion for summary judgment on the quantum meruit claim. The trial court's order does not state the trial court's basis for granting the summary judgment. Haddock, relying on oral statements the trial court made at the summary judgment hearing, asserts the trial court granted summary judgment on this claim for the sole reason that a contract governing the subject matter exists.

When more than one ground is asserted in a motion for summary judgment and the trial court does not specify the grounds on which it rendered summary judgment, an appellant must challenge each ground asserted. *Worldwide Asset Purchasing, LLC v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 569 (Tex. App.—Dallas 2009, no pet.). In reviewing a summary judgment, we look only to the trial court's written order for determining the basis for granting the summary judgment and may not consider any oral reason given at the summary judgment hearing. *Ajudani v. Walker*, 177 S.W.3d 415, 418 n.3 (Tex. App.—Houston [1st Dist.] 2005, no pet.) *Richardson v. Johnson & Higgens of Tex., Inc.*, 905 S.W.2d 9, 11 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *cf. Sharpe v. Roman Catholic Diocese of Dallas*, 97 S.W.3d 791, 796 (Tex. App.—Dallas 2003, pet. denied) (letter from trial court cannot be considered on appeal for providing reasons for summary judgment). Indeed, a statement of facts from a summary judgment hearing is neither necessary nor appropriate in an appeal from a summary judgment. *See Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 885-86 (Tex. App.—Dallas 2011, pet. denied).

Here, the trial court's summary judgment order did not specify the grounds on which it relied to grant the summary judgment. In his brief, Haddock has failed to properly challenge each ground asserted in the motion. Haddock's brief does include a footnote in which he asserts, without citation to any legal authority, that summary judgment was improper on the no-evidence grounds. Because this footnote is not supported by proper legal argument or authority, it fails to properly challenge the no-evidence grounds. *See Bever Properties, L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 885-86 (Tex. App.—Dallas 2011, no pet.). Further, Haddock wholly fails to challenge traditional grounds raised in Capital One's motion for summary judgment. We conclude Haddock has failed to properly challenge each ground on which summary judgment may have been granted. TEX. R. APP. P. 38.1(h); *Henriquez v. Cemex Management, Inc.*, 177 S.W.3d 241, 255 (Tex. App.—Houston [1st Dist.] 2005, pet. denie). Therefore, we cannot conclude the trial court erred in granting summary judgment on Haddock's quantum meruit claim. *Lagow v. Hamon ex rel. Roach*, ___ S.W.3d ___, 2012 WL 3636893, at *7 (Tex. App.—Dallas 2012, no pet.).

The trial court's judgment also awarded Haddock attorney's fees based on its conclusion that Capital One breached the contract. Because we have concluded otherwise, Haddock's attorney's fee award must also be reversed. Capital One further asks that we award it its attorney's fees. Capital One filed a claim for attorney's fees in the trial court based on the contract, which allowed the prevailing party to recover its attorney's fees from the losing party. The trial court did not consider Capital One's claim below because Haddock was the prevailing party. Therefore, we remand to the trial court to determine Capital One's right to such an award. In determining the reasonableness of any such award, the trial court is instructed to consider the reasonableness of those fees in light of the *Arthur Anderson* factors. *Arthur Anderson & Co v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

We reverse the trial court's judgment awarding damages to Haddock for breach of contract and attorney's fees and render judgment Haddock take nothing on his claims. We remand Capital One's claim for attorney's fees to the trial court for further proceedings consistent with this opinion.


MICHAEL J. O'NEILL
JUSTICE

101028F.P05

-12-



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CAPITAL ONE, N.A., Appellant

No. 05-10-01028-CV     V.

STANLEY C. HADDOCK, Appellee

Appeal from the 44th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. No. 08-13162).
Opinion delivered by Justice O'Neill, Justices Richter and Lang participating.

     In accordance with this Court's opinion of this date, we **REVERSE** the trial court's judgment on Stanley C. Haddock's breach of contract claim and **RENDER** judgment that Haddock take nothing on that claim. We **AFFIRM** the trial court's judgment granting summary judgment in favor of Capital One on Haddock's quantum meruit claim. We **REMAND** this case to the trial court for a determination of Capital One's claim for attorneys fees. We **ORDER** that appellant Capital One, N.A. recover its costs of this appeal from appellee Stanley C. Haddock.

Judgment entered November 2, 2012.

MICHAEL J. O'NEILL
JUSTICE