**VACATE, AFFIRM and REVERSE in Part, and REMAND; Opinion Filed April 27, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01394-CV

### SUNNY LETOT, Appellant
### V.
### UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 13-00156-E**

## MEMORANDUM OPINION ON REHEARING

Before Justices Lang, Brown, and Richter[1]
Opinion by Justice Brown

We deny appellee United Services Automobile Association's (USAA) motion for rehearing, but withdraw our original opinion and substitute the following in its place.

Appellant Sunny Letot appeals a summary judgment granted in favor of USAA. In two issues, Letot generally asserts the trial court erred in granting summary judgment because (1) USAA failed to establish that it properly reported her vehicle as salvage to the Texas Department of Transportation, and (2) USAA otherwise failed to show it was entitled to summary judgment on her individual claims. For the following reasons, we reverse the trial court's summary judgment on Letot's claims under the Texas Insurance Code, conversion, and tortious interference with existing contractual relations and remand those claims to the trial court for

---

[1] The Hon. Martin Richter, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

further proceedings. We affirm the trial court's summary judgment that Letot take-nothing on her claims for tortious interference with prospective contractual relations, slander of title and injurious falsehood.

**Background**

On January 2, 2009, Letot was involved in a motor vehicle accident with USAA's insured, Evan Crosby. At the time of the collision, Letot was driving a vintage 1983 Mercedes she had recently restored.

Almost immediately after the collision, Letot contacted USAA seeking to recover her property damages. On January 15, after investigating her claim, USAA informed Letot that it had deemed her vehicle a "total loss" and offered to pay her $2,494.02, which it asserted was the actual cash value of her vehicle. On January 20, Letot rejected USAA's valuation and its offer.

Nevertheless, the next day, on January 21, USAA mailed Letot an uncertified check for $2,494.02 and, the day after that, USAA submitted an "Owner Retained Report" ("Report") to the Texas Department of Transportation ("TxDoT") pursuant to provisions of the Texas Certificate of Title Act ("the Act").[2] In the Report, USAA represented to TxDoT that it had paid a claim on a salvage motor vehicle, that Letot retained that vehicle, and therefore the motor vehicle records should be marked to prevent further transfer of title until Letot obtained a salvage title.

Letot subsequently received USAA's check. On January 30, now through counsel, Letot returned the check. That same day, TxDoT sent Letot a letter to inform her that USAA had filed the Report and, as a result, her registration was no longer valid, she was not permitted to operate the vehicle, and she could not transfer it until she obtained a salvage title.

---

[2] USAA asserts USAA CIC, a wholly owned subsidiary of USAA, actually insured Crosby. Letot refers to both USAA and USAA CIC as USAA. However, in a footnote, she states it was USAA that actually filed the Report. The parties otherwise treat the entities the same for purposes of this appeal. We refer to both USAA and USAA CIC as USAA.

After receiving the letter and discussing her options with her mechanic, Letot disposed of the vehicle as scrap to avoid incurring further storage fees. Then, almost two years after it filed the Report, USAA filed a "correction" with TxDoT, representing it had filed the Report in error and that the damages to Letot's vehicle were insufficient to classify it as a salvage motor vehicle.

Letot sued USAA asserting claims for (1) violations of the Insurance Code and the Deceptive Trade Practices Act, (2) conversion, (3) tortious interference with existing and prospective contractual relations, (4) slander of title, and (5) injurious falsehood. USAA moved for summary judgment asserting both traditional and no-evidence grounds. First, USAA asserted it was entitled to summary judgment on all of Letot's claims because it properly filed the Report in accordance with the provisions of the Act. USAA also moved for summary judgment on each of Letot's individual claims. Following a hearing, the trial court granted USAA's motion, without stating its reasons, and rendered judgment that Letot take nothing. This appeal followed.

## Summary Judgment

### 1. Traditional Motion for Summary Judgment

A traditional motion for summary judgment must state "the specific grounds therefor." TEX. R. CIV. P. 166a(c); *see also Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012) ("[C]ourt cannot grant summary judgment on grounds that were not presented."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993) (motion must expressly present grounds for summary judgment). "Grounds" refers to the reasons entitling the movant to summary judgment. *McConnell*, 858 S.W.2d at 339 n. 2. The motion must provide the nonmovant with adequate information to oppose the motion and to define the issues for the purpose of summary judgment. *See Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978).

To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Summary judgment is also proper if the material facts are not in dispute and the sole question is whether those facts entitle the movant to summary judgment. *City of Dallas v. Cornerstone Bank, N.A.*, 879 S.W.2d 264, 269 (Tex. App.—Dallas 1994, no writ).

## 2. No-Evidence Motion for Summary Judgment

A no-evidence motion is distinct from a traditional motion. Its purpose is to pierce the pleadings to assess whether the factual allegations have evidentiary support. *Robinson v. Warner–Lambert & Old Corner Drug*, 998 S.W.2d 407, 410 (Tex. App.—Waco 1999, no pet.). Unlike a movant seeking summary judgment on traditional grounds, the movant is not required to show it is entitled to judgment as a matter of law or to present any evidence. *See* TEX. R. CIV. P. 166a(i). Instead, the movant may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. *See id.* The motion must identify the particular element or elements on which there is no evidence. *Id.* A motion may be directed at specific factual theories or allegations within a claim or defense only if the challenge is connected to a specified element of a claim or defense. *See Pakideh v. Pope*, No. 13–08–00560–CV, 2010 WL 3820899, at *4–5 (Tex. App.-Corpus Christi Sept. 30, 2010, no pet.) (mem. op.) (no-evidence challenge to fourteen factual allegations not connected to a no-evidence challenge to an element of a claim was defective); *see also Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3–4 (Tex. App.—San Antonio 2000, pet. denied).

In ruling on a no-evidence motion, the trial court does not rule on substantive questions of law. *See, e.g. Hartford Accident & Indem. Co. v. Seagoville Partners,* 05-15-00760-CV, 2016 WL 3199003, at \*2 (Tex. App.—Dallas June 9, 2016, no pet.) (explaining distinction between summary judgment rulings based on summary judgment evidence and those based on substantive questions of law). Rather, it determines whether the movant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *Killingsworth v. Housing Auth. of City of Dallas*, 447 S.W.3d 480, 486 (Tex. App.—Dallas 2014, pet. denied). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

**Owner Retained Report**

As noted, Letot's claims are based on her complaint that USAA falsely reported that it had "paid a claim" on a salvage motor vehicle. USAA moved for summary judgment asserting it was entitled to traditional summary judgment on all of Letot's claims because it showed, as a matter of law, it filed the Report in accordance with mandatory provisions of the Texas Transportation Code. In her first issue, Letot contends the trial court erred in granting summary judgment on this ground because the Transportation Code neither required nor authorized USAA to file the Report.

Our resolution of this issue turns on our construction of former section 501.093(a) of the Act. At the time it filed the Report, section 501.093(a) provided: "if an insurance company pays a claim on a nonrepairable motor vehicle or salvage motor vehicle and the insurance company does not acquire ownership of the motor vehicle, the insurance company shall submit to [TxDoT] . . . a report stating that the insurance company: (1) has paid a claim on the motor vehicle; and (2) has not acquired ownership of the motor vehicle. *See* Act of May 4, 2003, 78th

Leg., ch. 1325, § 17.02, 2003 Tex. Gen. Laws 4979, 4983 (current version at TEX. TRANSP. CODE ANN. § 501.0002 (West 2012)).  When an insurance company submits such a report the owner of the motor vehicle "may not operate or permit operation of the motor vehicle on a public highway or transfer ownership of the motor vehicle by sale or otherwise unless the department has issued a salvage vehicle title or a nonrepairable vehicle title for the motor vehicle . . . ."  *Id.*  A "salvage motor vehicle" is a vehicle that has suffered damages to the extent "the cost of repairs . . . exceeds the actual cash value of the motor vehicle immediately before the damage."  TEX. TRANSP. CODE ANN. § 501.091 (West 2012).

Initially we note that it is undisputed that Letot made a claim for property damages to her vehicle.  It is also undisputed that USAA offered to pay her what it had determined represented the fair market value of her vehicle, but Letot rejected both that offer and the check that followed.  Finally, it is undisputed USAA actually paid nothing to Letot for her claim.

USAA nevertheless asserts it paid a claim on Letot's vehicle because, it argues, a tender of an uncertified check constitutes "payment of a claim," regardless of whether the payee accepted the payment, either before or after it was tendered.  To support its contention, USAA relies heavily on its assumption that the purpose of the Act is to protect the public from unsafe vehicles.[3]  From that, USAA views the payment requirement as a procedural issue to be determined entirely from the perspective of the insurance company.  More specifically, it asserts the term "pay" refers to "process of bestowing funds."

In interpreting a statute, we begin with the statute's plain language.  *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 59 (Tex. 2015).  The term "pay" has been defined as "to

---

[3] The Act itself states its purpose is to lessen and prevent theft of motor vehicles and the sale of encumbered motor vehicles without disclosing prior liens. TEX. TRANSP. CODE ANN. § 501.003 (West 2012); *see also Martinez v. Ford Motor Credit Co.*, 04-11-00306-CV, 2012 WL 3711347, at *3 (Tex. App.—San Antonio Aug. 29, 2012, pet. denied) (purpose of Act not to ensure vehicles in a safe condition, but to notify downstream purchasers about vehicle's prior damage.). We also note that whether a vehicle qualifies as salvage is a mathematical equation that does not incorporate any safety considerations. Indeed, it is as much, if not more, dependent on the starting value of the vehicle as on the cost of the repairs needed.

discharge an obligation," "to discharge an indebtedness for: SETTLE," "to make an agreed . . . transfer of money." *See* Webster's Third International Dictionary 519 (1981). USAA proffers only one definition that defines the term "pay" entirely from the perspective of the payor. Specifically, pay has been defined as "to give, offer, or make freely or fitting." Webster's Ninth New Collegiate Dictionary, 9th ed. p. 864 (1988). However, the notation that follows that definition explains it is referencing the meaning of the term in the context of to "pay attention." *See id.* So, we disagree with USAA that the term "pay" refers only to the payor's conduct without reference to any underlying agreement with the payee.

We likewise reject USAA's assertion that the legal meaning of the term "pay" means "tender" and, that as a consequence, its tender of an uncertified check to Letot constituted payment of a claim.[4] A tender is an offer of funds. *See* Black's Law Dictionary 1315 (5th ed. 1983) (tender is an offer or proffer of money); *Bucuum v. Great Am. Ins. Co. of N.Y.*, 370 S.W.2d 863, 866 (Tex. 1963) ("A tender is an unconditional offer by a debtor to pay another, in current coin of the realm, a sum not less in amount that that due on a specified debt or obligation."). It is not a *payment* of funds.[5] Moreover, tender of an uncertified check is a conditional offer. *See Probus Props. v. Kirby*, 200 S.W.3d 258, 262–63 (Tex. App.—Dallas 2006, pet. denied). For an uncertified check to constitute a "payment," the check must be both accepted and then honored. *Tex. Mut. Life Ins. Ass'n v. Tolbert*, 136 S.W.2d 584, 589 (Tex. 1940). We conclude that "pay" does not have the same meaning as "tender of payment." We

---

[4] According to Letot, sections 2.511 and 3.310 of the Business and Commerce Code support her payment argument. Under section 3.310 "unless otherwise agreed . . . if a note or uncertified check i*s taken* for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken." We cannot agree that section lends any support to USAA's contention. Section 3.310 only applies if a party *takes* a check as payment, it does not force a party to accept a check as payment. Under section 2.511, a tender of payment for goods is sufficient "when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender . . . ." TEX. BUS. COM. CODE ANN. § 2.511 (West 2009). Section 2.511 is inapplicable for the simple reason that it applies only to transactions involving the sale of goods. Id. at § 2.102. Moreover Section 2.511 determines when a buyer's payment constitutes a tender as a condition to the seller's duty to tender and complete delivery of goods. *Id.* It does not reference "payment."

[5] In *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423 (2004), the Texas Supreme Court concluded that the mailing of a check constitutes a *tender* of payment, and *if unconditional*, is sufficient to preclude a claimant from claiming penalties for failure to make a prompt payment. Contrary to USAA's suggestion, the Supreme Court did not conclude mailing a check constitutes a payment. *See id.*

–7–

further conclude that if the Legislature intended to require an insurer to submit a Report on a tender of payment alone, it surely would have said so.

Here, USAA showed only that it mailed an uncertified check in an effort to pay Letot a portion of her claimed damages. It is undisputed that Letot did not accept either the amount of payment or the manner in which USAA tendered it. Further, because Letot returned the check, USAA did not actually transfer any funds to Letot. We conclude USAA did not conclusively establish it paid a claim on Letot's vehicle or, therefore, that it properly filed the Report. Thus, the trial court erred in granting USAA's motion for summary judgment on that ground.[6]

USAA also moved for summary judgment on each of Letot's individual causes of actions. USAA's expressed grounds for summary judgment were largely based on, or at least intertwined with, its interpretation of the statutory language. We will address Letot's remaining challenges to the extent USAA's motion asserted independent grounds supporting summary judgment.

## Deceptive Insurance Practices

Letot asserted USAA violated provisions of 17.46(b) of the Deceptive Trade Practices Act ("DTPA") by falsely representing to TxDoT that it had paid a claim on a salvage motor vehicle. TEX. BUS. & COM. CODE ANN. § 17.46(b) (West 2011). Letot asserted her claims both directly under the DTPA and through section 541.051 of the Insurance Code. *See* TEX. INS. CODE ANN. § 541.151 (West 2009). USAA filed a motion for summary judgment on these claims asserting Letot lacked standing to sue under either the DTPA or the Insurance Code. First, USAA asserted Letot lacked standing to sue directly under the DTPA because she was not

---

[6] In its motion for rehearing, USAA asserts that, regardless of whether it paid a claim on Letot's vehicle, the trial court properly granted its traditional motion for summary judgment because it conclusively established Letot's vehicle was a salvage motor vehicle. USAA did not move for summary judgment on that ground. Nor were Letot's claims premised on whether or not, as a factual matter, her vehicle was a salvage motor vehicle.

a consumer. In a separate ground, USAA asserted that Letot lacked standing under the Insurance Code because her claims arose out of USAA's actions in handling her claim as a third party claimant of insurance benefits. On appeal, Letot only challenges the trial court's summary judgment with respect to her standing under section 541.051 the Insurance Code.

Under Section 541.051, "a person" may bring a claim for damages for violations of section 17.46(b) the DTPA. *Id*. Thus, the Insurance Code, unlike the DTPA, does not require a plaintiff to be a consumer to bring an action, even if her claims are based on violations of the DTPA. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 384 (2000). The plaintiff may, nevertheless, be required to prove consumer status if the DTPA violation asserted itself requires consumer status. *Id*.

In its motion for summary judgment USAA asserted Letot lacked standing to assert claims under the Insurance Code because her claims arose out of its actions in settling her claim against Crosby, its insured. USAA relied on *Allstate Ins. v. Watson,* 866 S.W.2d 145, 149 (Tex. 1994). In *Watson*, the plaintiff sued Allstate asserting claims for unfair settlement practices and specifically complained Allstate had failed to promptly settle her third-party claim against its insured. The supreme court acknowledged the Insurance Code (then former article 21.21) granted broad standing to "any person" to sue for unfair practices in the business of insurance. The supreme court nevertheless concluded the plaintiff in that case lacked standing. *Id*. The supreme court's analysis turned on whether the plaintiff had a substantive claim under the Insurance Code. It concluded she did not because her claims were based on violations of duties Allstate did not owe her, but owed its insured. *See id*. at 145. The supreme court refused to recognize a third-party cause of action because it would compromise the insurer's duties to its insured. *Id*. at 150.

The Supreme Court has since declined to extend *Watson* beyond its rationale. *See Rocor Intern, Inc. v. Nat'l Fire Ins. Co. of Pittsburgh, P.A.*, 77 S.W.3d 253, 258 (Tex. 2002); *Casteel*, 22 S.W.3d at 384. Specifically, the Supreme Court has consistently recognized the Insurance Code provides broad standing to any person who has been damaged by deceptive or unfair trade practices in the insurance industry. *See Casteel*, 22 S.W.3d at 384 (grant of broad standing is consistent with legislature's express objective to regulate all insurance trade practices); *see also Rocor Intern,* 77 S.W.3d at 77.

In its motion for summary judgment, USAA relied entirely on Letot's status as a third party claimant to show she lacked standing to assert claims under the Insurance Code. In other words, USAA did not assert she lacked an underlying claim. Nor did it assert she lacked standing to sue for the specific DTPA violations she alleged. We conclude Letot's status as a third party claimant was only incidental to her claims and therefore, did not defeat her standing. Specifically, Letot was not claiming USAA owed her any duties or obligations under an insurance policy. Nor were Letot's claims related to any liability Crosby may have had. We conclude USAA did not conclusively establish that Letot lacked standing to assert her claims.[7]

USAA also moved for summary judgment on the merits of Letot's Insurance Code claims. As noted, Letot's claims under the Insurance Code were based on her contention that USAA violated provisions of the DTPA. On appeal, the parties both identify USAA's motion for summary judgment on these claims as generally challenging whether Letot had any evidence it made a false statement.

According to Letot, the trial court erred in granting summary judgment on this ground because she presented sufficient evidence to show USAA falsely stated it paid a claim on

---

[7] On appeal, Letot also asserts the trial court erred in granting summary judgment in favor of USAA on her Insurance Code claims because she asserted DTPA violations that do not require consumer standing. We have reviewed USAA's motion for summary judgment and conclude it did not assert that, and it did not ask the trial court determine whether Letot's individual claims required consumer status. We conclude that question is not properly before us at this time.

–10–

her vehicle. In its response, USAA relies on essentially the same arguments it made under the first issue; specifically, it asserts it did pay a claim on a salvage motor vehicle. We have previously rejected USAA's contention. We conclude the trial court erred in granting USAA's motion for summary judgment on this basis.

USAA also moved for summary judgment on Letot's Insurance Code claims on the basis that she had no evidence of any damages. Letot presented evidence that, as a direct result of USAA's representations, she was prohibited from operating her vehicle, her registration was declared invalid, and she was required to obtain a salvage vehicle title. We conclude this evidence constitutes more than a scintilla of evidence to show Letot was damaged as a result of USAA's conduct. For the foregoing reasons, we conclude the trial court erred in granting USAA's motion for summary judgment on Letot's claims under the Insurance Code.

### Conversion

Letot next asserts the trial court erred in granting USAA's motion for summary judgment on her conversion claim. Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc*., 474 S.W.2d 444, 447 (Tex. 1971); *see also Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C*., 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.). To prove conversion, a plaintiff must ordinarily establish: (1) it owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 75859 (Tex. App.–Dallas 2008, no pet.). The demand and refusal

elements are not, however, required if other evidence establishes an act of conversion.[8] *See Presley v. Cooper*, 155 Tex. 168, 284 S.W.2d 138, 141 (1955); *see also Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 700 (Tex. App.—Dallas 2012, no pet.). An act of conversion does not have to be an actual manual taking but merely an act that is such an active interference with the owner's right of property or control as to deprive him of its free use and enjoyment. *Pierson v. GFH Fin. Services Corp.*, 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)); *see also American Surety Co. v. Hill County*, 254 S.W. 241, 245–46 (Tex. Civ. App. 1923), *aff'd*, 267 S.W. 265 (1924).

Letot's conversion claim was based on her complaint that USAA unlawfully exercised dominion and control over her vehicle, her title and her registration by filing the Report. *See Bures v. First Nat. Bank, Port Lavaca*, 806 S.W.2d 935, 938 (Tex. App.—Corpus Christi 1991, no writ) (a title is property subject to conversion). USAA moved for summary judgment asserting:

> There is no evidence supporting any element of Letot's conversion claim. Indeed, the summary judgment evidence conclusively establishes that USAA [] never exercised dominion or control over Letot's vehicle. It is undisputed that, at all times before she destroyed the vehicle and sold it as scrap, Letot, not USAA [] retained exclusive control over the vehicle. Indeed, the act about which Letot complains is [USAA's] filing of an "Owner Retained Report with the TxDoT, in which USAA [] noted that despite [USAA's] payment, Letot *retained* possession of the vehicle.

Initially, we note that USAA's motion for summary judgment was premised on the assumption that conversion requires the defendant to exercise physical dominion and control

---

[8] Ordinarily, a demand and refusal are required to establish a conversion when a person initially acquired possession lawfully and without fault. *Hull v. Freedman*, 383 S.W.2d 236, 238 (Tex. Civ. App.—Fort Worth 1964, writ ref'd n.r.e.). The purpose of demand and refusal is most effectively illustrated in bailment, where "a conversion by the bailee cannot otherwise by shown than by his refusal to comply with the demand for possession." *Id; Burns v. Rochon*, 190 S.W.3d 263, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

over property. However, USAA did not move for summary judgment on that basis or any other traditional ground for summary judgment. *See, e.g. Hartford Accident & Indem.,* 2016 WL 3199003, at *2 (explaining distinction between summary judgment rulings based on summary judgment evidence and those based on substantive questions of law); *see also Sacks v. Zimmerman*, 401 S.W.3d 336, 339 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); (party should not circumvent the protective features of the special exception procedure by urging a motion for summary judgment on the pleadings or by other means when a plaintiff's pleadings fail to state a claim). Instead, it moved for summary judgment on "no evidence" grounds, but based on a factual theory that Letot did not allege. *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 231-32 (Tex. App.—Dallas 2000, pet. denied) (motion for summary judgment must meet the plaintiff's cause of action as pleaded).

We conclude Letot presented sufficient evidence to support the elements of her claim based on the factual theory she alleged. The summary judgment evidence showed that, after Letot rejected USAA's offer to pay her claim, USAA notified TxDoT it had paid her claim, that Letot had retained the vehicle, and therefore her motor vehicle records should be marked to prevent her from transferring it. *Robinson v. Nat'l Autotech, Inc*., 117 S.W.3d 37, 40 (Tex. App.—Dallas 2003, pet. denied) (dominion is defined as: "in law, power to direct, control, use, and dispose of; right of possession and use). As a direct result, the record of Letot's title was physically marked as "SURRENDERED," Letot's registration was cancelled, and Letot was prohibited from using or transferring the vehicle. We conclude Letot presented sufficient summary judgment evidence to show USAA intentionally and unlawfully assumed and exercised dominion and control over her property in a manner that was inconsistent with her rights.[9]

---

[9] We also reject USAA's assertion that Letot failed to raise a fact issue because, regardless of its actions, Letot only had the rights of an owner of a salvage vehicle. USAA's argument, however, does not relate to the elements of conversion or to whether Letot presented sufficient evidence to support them. *See Pakideh*, 2010 WL 3820899, at *4–5 (a no-evidence motion for summary judgment may be directed at specific

–13–

USAA also moved for summary judgment on the basis that there was no evidence USAA intended to assert a right in Letot's property. However, USAA's argument was premised on its contention that USAA had no intent to obtain physical possession of Letot's property, which was not disputed. Moreover, the evidence showed USAA intentionally filed the Report, claiming it had paid a claim on a salvage vehicle, and USAA specifically requested TxDoT to invalidate Letot's title. We conclude that evidence raised a fact issue showing USAA intentionally asserted rights in Letot's property.

Finally, USAA moved for summary judgment on the ground that Letot could show no injury or damages. Again, it is undisputed that, as a direct result of USAA's actions, Letot's title and registration were no longer valid. We conclude that evidence was sufficient to raise a fact issue on damages. Therefore, USAA did not establish it was entitled to summary judgment on Letot's conversion claim.

### Tortious Interference with Existing Contract

Letot next asserts the trial court erred in granting summary judgment on her tortious interference with existing contract claim. Letot's tortious interference claim was based on her complaint that USAA falsely represented to TxDoT that it had paid her claim on a salvage vehicle and requested it to mark her title record to prevent her from transferring her vehicle. As an immediate result of USAA's actions, her registration and title were deemed invalid.

A party alleging tortious interference must prove four elements to sustain its claim: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred. *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.

---

factual theories or allegations within a claim or defense if the challenge to the factual allegation is connected to a no-evidence challenge to a specified element of a claim or defense).

1997).    In its motion for summary judgment, USAA acknowledged that Letot's tortious interference claim was based on its interference with her vehicle registration and permit.    USAA did not dispute the registration and permit existed or that it interfered with them.    Thus, USAA's motion was not directed to whether Letot could prove the factual basis of her claim.    It nevertheless purported to move for summary judgment on "no-evidence grounds," asserting that it could not have interfered with Letot's existing contract because "there was no existing contract or agreement between Letot and the state under which Letot was entitled to anything but a 'salvage motor vehicle.'"

Having reviewed USAA's motion for summary judgment, we agree with Letot that it did not present a legal basis for summary judgment on this claim.  Indeed, it is not entirely clear on what legal theory USAA was basing its entitlement to summary judgment.  We conclude the trial court erred in granting USAA summary judgment on Letot's tortious interference with existing contract claim.

### Tortious Interference with Prospective Contractual Relations

Letot also asserts the trial court erred in granting USAA's traditional motion for summary judgment on her tortious interference with prospective contract claim.  To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

USAA moved for summary judgment asserting Letot had no evidence USAA committed any independent tortious conduct, no evidence it interfered with any prospective business relationships, and no evidence she was injured as a result of any interference. On appeal, Letot asserts USAA's filing of the Report was independently tortious. Letot has not, however, challenged USAA's other grounds for summary judgment on this claim. Therefore, she has failed to show the trial court erred in granting summary judgment on this claim. TEX. R. APP. P. 38.1(h); *Capital One, N.A. v. Haddock*, 394 S.W.3d 605, 612 (Tex. App.—Dallas 2012, pet. denied).

**Slander of Title/Injurious Falsehood**

Letot's claims for slander of title and injurious falsehood were based on her claim that USAA made false and disparaging statements about her car. USAA moved for summary judgment on those claims asserting, among other things, she had no evidence of special damages and no evidence that she had lost a specific sale. Slander of title is a species of injurious falsehood arising from a party's disparaging statements about a person's title. *See Ellis v. Waldrop*, 656 S.W.2d 902, 904-05 (Tex. 1983). To succeed in an action for slander of title, a party must prove special damages, specifically the loss of a specific sale. *Id*. On appeal, Letot has not challenged USAA's motion for summary judgment on the ground that she had no evidence of special damages and no evidence she lost a specific sale. We conclude she has failed to show summary judgment on this claim was improper.

For the foregoing reasons, we conclude the trial court erred in granting summary judgment in favor of USAA on Letot's claims under the Insurance Code, for conversion, and for tortious interference with existing contract and remand those claims to the trial court for further

proceedings.  We affirm the trial court's judgment ordering that Letot take nothing on her claims

for tortious interference with prospective contract and slander of title and injurious falsehood.



/Ada Brown/

ADA BROWN
JUSTICE


141394F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SUNNY LETOT, Appellant

No. 05-14-01394-CV          V.

UNITED SERVICES AUTOMOBILE
ASSOCIATION, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 13-00156-E.
Opinion delivered by Justice Brown. Justices
Lang and Richter participating.

In accordance with this Court's opinion of this date, we **VACATE** our August 18, 2016 judgment.

The trial court's judgment is **AFFIRMED** in part and **REVERSED** in part.  We **REVERSE** that portion of the trial court's judgment that appellant Sunny Letot take nothing on her claims under the Texas Insurance Code, conversion, and tortious interferences with existing contractual relations.  In all other respects, the trial court's judgment is **AFFIRMED**.  We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant SUNNY LETOT recover her costs of this appeal from appellee UNITED SERVICES AUTOMOBILE ASSOCIATION.

Judgment entered this 27th day of April, 2017.